**PARKCENTRAL GLOBAL, L.P.,**
**Defendant Below, Appellant,**

v.

**BROWN INVESTMENT MAN-**
**AGEMENT, L.P., Plaintiff**
**Below, Appellee.**

No. 288, 2010.

Supreme Court of Delaware.

Submitted: July 7, 2010.
Decided: Aug. 12, 2010.

**35.** *Pershing Square,* 923 A.2d at 817–18.

R. Judson Scaggs, Jr. (argued) and Ryan D. Stottmann, Morris of Nichols, Arsht & Tunnell LLP, Wilmington, Delaware, for appellant.

Elizabeth M. McGeever, Prickett, Jones & Elliott, P.A., Wilmington, Delaware. Of Counsel: Demetrios Anaipakos and Amir H. Alavi, pro hac vice, (argued), Ahmad, Zavitsanos & Anaipakos, P.C., Houston, Texas, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices constituting the court en banc.

STEELE, Chief Justice:

Parkcentral Global, L.P. refused Brown Investment Management, L.P.'s request for its list of limited partners. Parkcentral asserts that the Vice Chancellor erred by requiring Parkcentral to provide the list to Brown, because the Partnership Agreement allows Parkcentral to restrict access to that information, and federal law prohibits disclosure of agreements with third parties. Because Brown complied with the Partnership Agreement, and limited partners are not "third parties" to the partnership, we **AFFIRM** the judgment of the Court of Chancery.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. Parkcentral provided investors with information about privacy policies.

Parkcentral is a hedge fund, incorporated as a Delaware limited partnership in June 2001 with Parkcentral Capital Management, L.P. as its general partner. Parkcentral invested all of its capital in an affiliated fund known as Parkcentral Global Hub Limited, a Bermuda corporation.

Parkcentral informs all prospective investors, in a private placement memorandum ("PPM"), that confidentiality concerns will limit their access to partnership information. In 2002, the General Partner informed investors that federal regulations obligated it to provide annual notice of its privacy policies. Parkcentral's annual privacy notice stated, "[W]e generally do not disclose any non-public personal information about our current or former investors that we obtain during the course of our relationship to unaffiliated third parties, except as permitted by law."

The 2003 PPM included a section entitled "Privacy Policy" with language that mirrored the Privacy Notice's language. It states, "With respect to the General Partner's individual, non-entity investors, the General Partner does not disclose non-public personal information about such clients/investors or former clients/investors to third parties other than described below." The section also included a general policy that stated, "The General Partner does not otherwise provide any non-public personal information about investors to outside firms, organizations or individuals, except as required by law."

Beginning in 2004, Parkcentral's subscription documents required all investors

to agree that they have "reviewed the General Partner's privacy policy contained in the Memorandum [PPM]."

## 2. Disclosure under the Partnership Agreement.

Section 9.1 of Parkcentral's Second Amended and Restated Limited Partnership Agreement, entitled "Partnership Records," mirrors the language of § 17–305 of the Delaware Revised Uniform Limited Partnership Act.[1] Section 9.1(b) allows each partner, subject to § 9.1(c) and reasonable standards established by the General Partner, to obtain records, including a current list of partners' names and addresses, upon reasonable demand.[2] Section 9.1(c) provides that the General Partner may keep information confidential if it believes in good faith that disclosure is not in the best interest of the Partnership or if the General Partner is bound by law or agreement with a third party to keep the information confidential.[3]

## 3. Parkcentral ceased operation and investors brought suit in Texas.

In August 2008, Brown signed subscription documents and became a limited partner in Parkcentral. In the subscription documents, Brown represented that it had reviewed the PPM and the Partnership Agreement.

In November 2008, Parkcentral suffered large losses that wiped out investors' capital. As a result, Brown lost its entire investment. The Global Hub fund ceased trading, "terminated substantially all of its positions," and was liquidated. Now, Parkcentral's only activity is to defend

---

**1.** 6 *Del. C.* § 17–305.

**2.** Section 9.1(b) of the Partnership Agreement provides:

> Each Partner or its duly authorized representative shall have the right, subject to the provisions of Section 9.1(c) and such other reasonable standards as may be established from time to by the General Partner (including standards governing what information and documents are to be furnished at what time and location and at whose expense), to obtain from the General Partner from time to time upon reasonable demand (which demand shall be in writing and shall state the purpose thereof) for any purpose reasonably related such Partner's interest as a Partner: (i) true and full information regarding the status of the business and financial condition of the Partnership; (ii) promptly after becoming available, a copy of the federal, state, and local income tax returns of the Partnership for each Fiscal Year; (iii) a current list of the name and last known business, residence or mailing address of each Partner; (iv) a copy of this Agreement and the Certificate and any amendment and/or restatement hereof or thereof, together with executed copies of any written powers of attorney pursuant to which this Agreement or the Certificate or

> any amendment and/or restatement hereof or thereof has been executed; (v) true and full information regarding the amount of case and a description and statement of the agreed value of any other property or services contributed by each Partner to the Partnership or which each Partner has agreed to contribute to the Partnership in the future, and the date on which each became a Partner; and (vi) such other information regarding the affairs of the Partnership as is just and reasonable.

**3.** Section 9.1(c) of the Partnership Agreement provides:

> Notwithstanding anything in this Agreement to the contrary, the Limited Partners understand and agree that the General Partner shall have the right to keep confidential from the Limited Partners, for such period of time as the General Partner deems reasonable, any information which the General Partner reasonably believes to be in the nature of trade secrets or other information the disclosure of which the General Partner in good faith believes is not in the best interests of the Partnership or could damage the Partnership or its business or which the Partnership is required by law or by agreement with a third party to keep confidential.

lawsuits against it, and has no plans to raise new capital for future investment operations.

In spring 2009, certain Parkcentral investors brought a class action claim in a Texas federal court against individuals and entities affiliated with Parkcentral. The lawsuit alleged mismanagement of the fund and breaches of fiduciary duty, among other claims. Brown is not involved in the Texas litigation, except as an absent member of the purported class.

### 4. Brown requested a list of limited partners.

On December 21, 2009, Brown wrote to the General Partner and requested a "current list of the name and last known business, residence or mailing address of each Partner in Parkcentral." Brown wrote again to reiterate its demand on January 5, 2010. The General Partner responded that the demand failed to state a proper purpose for the request, as required by § 9.1(b) of the Partnership Agreement. The General Partner also denied the request because "applicable law" and Parkcentral's privacy policies purportedly prohibited the disclosure of nonpublic information.

On January 15, 2010, Brown submitted a third request for a list of names and addresses of Parkcentral partners. Brown stated that it sought the information to: (a) contact other limited partners in order to investigate claims of the General Partner's mismanagement or breaches of fiduciary duty; (b) contact other limited partners to investigate the allegations made in the Texas litigation; (c) contact other limited partners to bring their attention to the Texas litigation and ascertain their desire to become associated with it or pursue similar actions; (d) contact other limited partners to investigate potential direct and derivative claims against the partner-ship's auditors; and (e) contact other limited partners to discuss whether any of them would desire to pursue a derivative and/or direct claim against the partnership's auditors. Brown further stated that it was investigating the allegations raised in the Texas litigation.

On January 20, 2010, the General Partner's counsel responded that Parkcentral's privacy obligations limited the General Partner's ability to disclose information and suggested Brown's counsel contact them regarding the request.

### 5. The Vice Chancellor ordered Parkcentral to produce the list.

On February 4, 2010, Brown filed a complaint in the Court of Chancery under 8 *Del. C.* § 220 seeking an order that Parkcentral provide Brown with the name and address of each partner. The Vice Chancellor conducted a trial on May 11, and ordered Parkcentral to produce the list, pursuant to the Partnership Agreement and § 17–305. He noted that Brown met both the procedural and substantive requirements for access, and that Parkcentral had not placed restrictions to limited partners' rights in the Partnership Agreement. The Vice Chancellor ordered Parkcentral to produce a list of each of its partners' name and last known business, residence, or mailing address. The order directed Brown to keep the list confidential and to use it only for the purposes set forth in its January 15 letter.

On May 14, 2010, Parkcentral appealed the Vice Chancellor's order and requested that the Vice Chancellor stay the order pending appeal. The Vice Chancellor denied the stay, but this Court granted a stay on May 27, 2010.

### STANDARD OF REVIEW

 We review the Vice Chancellor's interpretation of written agreements and

Delaware law *de novo*.[4] We also review *de novo* the Vice Chancellor's statutory interpretation that federal law does not preempt disclosure of the partnership list.[5]

## ANALYSIS

### 1. Brown has a right to the list under the Partnership Agreement.

The parties to a Delaware limited partnership have broad discretion when drafting their partnership agreement.[6] DRULPA gives "maximum effect to the principle of freedom of contract and to the enforceability of partnership agreements."[7]

Title Six, section 17–305 of the Delaware Code entitles limited partners to access partnership information and records if they make a reasonable demand for a purpose reasonably related to their interest as a limited partner.[8] Subsection (a) allows the general partner to establish reasonable standards governing the right to access information in the partnership agreement or otherwise.[9] Subsection (f) allows the general partner to restrict the rights of a limited partner to obtain information under § 17–305 in the partnership agreement.[10]

Parkcentral asserts that the Partnership Agreement and § 17–305(a) authorizes the General Partners to establish reasonable standards governing access to information.[11] Parkcentral claims that the annual Privacy Notices constitute reasonably restrictive standards that permitted it to deny Brown's request.[12]

Parkcentral cannot deny Brown's request based on its Privacy Notices. The Partnership Agreement expressly grants limited partners the right to access a list of the names and addresses of each partner. Brown complied with all the procedural requirements of § 9.1(b), which entitles Brown to the list of names and addresses.[13] The General Partner may not eliminate that right through unilaterally issued Privacy Notices. The General Partner's policy goes beyond reasonably governing access to information; it purports to deny completely a right granted in the Partnership Agreement. If the General Partner wished to bar access to the names and addresses of partners, it could have done so explicity in the Partnership Agreement under § 17–305(f).

### 2. Federal regulations do not pre-empt Delaware law.

Parkcentral asserts that federal regulations pre-empt Delaware law and prohibit disclosure of the shareholder list to Brown. The Gramm–Leach–Bliley Fi-

---

4. *Gotham Partners, L.P. v. Hallwood Realty Partners, L.P.,* 817 A.2d 160, 170 (Del.2002).

5. *Rapposelli v. State Farm Mut. Auto. Ins. Co.,* 988 A.2d 425, 427 (Del.2010).

6. *Id.*

7. 6 *Del. C.* § 17–1101(c).

8. 6 *Del. C.* § 17–305(a).

9. 6 *Del. C.* § 17–305(a).

10. 6 *Del. C.* § 17–305(f).

11. Partnership Agreement § 9.1 essentially adopts the language of § 17–305. *See supra* footnotes 2–3 for the language of the Partnership Agreement.

12. The Privacy Notice states that "we generally do not disclose any non-public personal information about our current or former investors that we obtain during the course of our relationship to unaffiliated third parties, except as permitted by law."

13. The parties do not dispute that Brown made a reasonable demand in writing and stated a proper purpose reasonably related to its interest as a partner.

nancial Modernization Act of 1999 provides privacy protections for customers of financial institutions.[14] Pursuant to the Act, the Federal Trade Commission, the Commodities Futures Traders Commission, and the Securities and Exchange Commission adopted rules designed to protect individuals' privacy interests.[15] Under these Privacy Regulations, a financial institution may not disclose any nonpublic personal information about a consumer to a non-affiliated third party unless the individual has been provided notice and the opportunity to opt out of the disclosure.[16] The Privacy Regulations contain subsections entitled "Relation to State laws."[17] The FTC's privacy Regulation states:

> This subpart shall not be construed as superseding, altering, or affecting any statute, regulation, order, or interpretation in effect in any State, except to the extent that such State statute, regulation, order, or interpretation is inconsistent with the provisions of this subpart,

and then only to the extent of the inconsistency.[18]

▉ Federal agencies, acting within the scope of their congressionally delegated authority, may pre-empt state law.[19] "Pre-emption occurs when Congress, in enacting a federal statute, expresses a clear intent to pre-empt state law, when there is outright or actual conflict between federal and state law, [or] where compliance with both federal and state law is in effect physically impossible."[20] Where two statutes narrowly conflict, we will read them so as to give effect to both, unless the text or legislative history of the later statute shows that the legislature intended to repeal an earlier one and simply failed to do so expressly.[21]

The Privacy Regulations do not pre-empt Delaware law, nor—for reasons discussed below—do the federal statute or regulations apply to the partner list. A financial institution may comply with both the Privacy Regulations and 6 *Del. C.* § 17–305.[22] The agencies did not express

---

**14.** 15 U.S.C. § 6801.

**15.** In its brief, Parkcentral cited three agencies which adopted regulations pursuant to the Act. The regulations all utilize essentially the same subsections, titles, and text. The FTC adopted 16 C.F.R. § 313; the CFTC 17 C.F.R. § 160; and the SEC 17 C.F.R. § 248.

**16.** 16 C.F.R. § 313.10:

> (a)(1) Conditions for disclosure. Except as otherwise authorized in this part, you may not, directly or through any affiliate, disclose any nonpublic personal information about a consumer to a nonaffiliated third party unless:
> (i) You have provided to the consumer an initial notice as required under § 313.4;
> (ii) You have provided to the consumer an opt out notice as required in § 313.7;
> (iii) You have given the consumer a reasonable opportunity, before you disclose the information to the nonaffiliated third party, to opt out of the disclosure; and
> (iv) The consumer does not opt out.

The CFTC and SEC regulations contain essentially the same language. 17 C.F.R. § 160.10; 17 C.F.R. § 248.10.

**17.** 16 C.F.R. § 313.17; 17 C.F.R. § 160.17; 17 C.F.R. § 248.17.

**18.** 16 C.F.R. § 313.17(a). The CFTC and SEC regulations contain essentially the same language. 17 C.F.R. § 160.17(a); 17 C.F.R. § 248.17(a).

**19.** *Louisiana Public Service Com'n v. F.C.C.,* 476 U.S. 355, 369, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986) (citations omitted).

**20.** *Id.* at 368, 106 S.Ct. 1890 (citations omitted).

**21.** *Olson v. Halvorsen,* 986 A.2d 1150, 1160 (Del.2009).

**22.** The Chancellor reached a similar conclusion in *Arbor Place, L.P. v. Encore Opportunity Fund, L.L.C.,* 2002 WL 205681 (Del.Ch. January 29, 2002). In *Arbor Place,* the list was

a clear intent to pre-empt state law. Rather, to comply with state law, they included an exception to the notice and opt out requirements when a financial institution discloses non-public personal information. For example, the FTC's regulation states:

> "(a) Exceptions to opt out requirements. The requirements for initial notice in § 313.4(a)(2), for the opt out in §§ 313.7 and 313.10, and for service providers and joint marketing in § 313.13 do not apply when you disclose nonpublic personal information:
>
> . . .
>
> (7)(i) To comply with Federal, State, or local laws, rules and other applicable legal requirements." [23]

Disclosure of the list of the limited partners' names and addresses to another limited partners falls within that exception because 6 *Del. C.* § 17–305 requires it. In addition to our holding that the federal Privacy Regulations do not pre-empt Delaware law, we also conclude that Parkcentral's limited partners are not "unaffiliated third parties" whose identities the Privacy Regulations would protect from disclosure. Accordingly, the Privacy Regulations do not preclude Parkcentral from disclosing the list of limited partners' names and addresses to Brown.

### 3. Section 9.1(c) of the Partnership Agreement does not allow Parkcentral to withhold the shareholder list.

■ Further, Parkcentral asserts that the Partnership Agreement § 9.1(c) allows it to keep the list of names and addresses confidential from Brown for two reasons: it believed in good faith that disclosure would damage the Partnership, and it is required by agreement with a third party to keep the information confidential.[24]

First, Parkcentral did not demonstrate that it had a good faith belief that providing a list of names and addresses would harm the Partnership.[25] At trial, Parkcentral COO David Radunsky testified that disclosure would cause damage to the Partnership because it had a moral and contractual obligation to keep the information confidential.[26] The Vice Chancellor

---

requested under 6 *Del. C.* § 18–305, a parallel statute to § 17–305 for limited liability companies. The Chancellor ruled that the SEC regulations did not preclude disclosure because they contained an exception to the notice and opt-out requirements in order to comply with state law. *Id.* at *4.

23. 16 C.F.R. § 313.15(a). The CFTC and SEC regulations contain essentially the same language. 17 C.F.R. § 160.15(a); 17 C.F.R. § 248.15(a).

24. Section 9.1(c):
Notwithstanding anything in this Agreement to the contrary, the Limited Partners understand and agree that the General Partner shall have the right to keep confidential from the Limited Partners, for such period of time as the General Partner deems reasonable, any information which the General Partner reasonably believes to be in the nature of trade secrets or other information the disclosure of which the

General Partner in good faith believes is not in the best interests of the Partnership or could damage the Partnership or its business or which the Partnership is required by law or by agreement with a third party to keep confidential.

25. *Bond Purchase, L.L.C. v. Patriot Tax Credit Properties, L.P.*, 746 A.2d 842, 859 (Del.Ch. 1999) ("Under 17–305(b), on the other hand, the general partner of a partnership needs to prove by a preponderance of the evidence only that there is a basis for it in good faith to believe that providing a partner with a list of partners would not be in the best interest of the partnership or would damage the partnership."). Section 9.1(c) of the Partnership Agreement is practically identical to § 17–305(b).

26. During direct examination, Radunsky testified:
But I think, to me—because we have promised people that we will keep their in-

found and held that the General Partner did not possess a good faith belief that disclosure would harm the Partnership. We agree. Parkcentral does not actively conduct business; it has no business to damage. Disclosure of the names and addresses of the partners *may* harm the General Partner's reputation and it *may* limit certain individuals' ability to gain investors in future funds, but it will not damage Parkcentral.

Second, there is no agreement with a third party that requires Parkcentral to keep the information confidential from its limited partners. Parkcentral attempts to classify each limited partner as a "third party" in relation to the other limited partners, and then goes onto assert that the PPM created an agreement that the General Partner would keep the limited partners' information confidential.[27] But the limited partners all signed and became principal parties to the Partnership Agreement. Therefore, the "third party agreement" provision does not apply or require Parkcentral to keep the information confidential.[28]

## CONCLUSION

For the foregoing reasons, the judgment of the Court of Chancery is affirmed.

formation confidential—to me it's a legal undertaking that we've made and a moral undertaking that we've made to do that, and it's our professional responsibility to fulfill that. And I think that to not do it is hurtful to an entity. An entity ought not breach its moral and legal promises.

27. The PPM states that the "General Partner does not otherwise provide any non-public personal information about investors to outside firms, organizations or individuals, except as required by law."

28. We need not address whether the PPM constituted an agreement.