J-A05020-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| GREGORY LUSTER, | |
| Appellant | No. 552 WDA 2016 |

Appeal from the Judgment of Sentence Entered February 6, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0010391-2013

BEFORE:  GANTMAN, P.J., BENDER, P.J.E., and MOULTON, J.

MEMORANDUM BY BENDER, P.J.E.:                **FILED MAY 16, 2017**

Appellant, Gregory Luster, appeals from the judgment of sentence of 12 to 24 years' incarceration, followed by 3 years' probation, imposed after he was convicted of aggravated assault and carrying a firearm without a license.  On appeal, Appellant challenges the sufficiency of the evidence to sustain his convictions, and also alleges that the Commonwealth failed to timely disclose certain evidence, thus entitling him to a new trial.  We affirm.

Briefly, Appellant's convictions stem from his shooting the victim in this case, Rashawn Hall.  Herein, Appellant sets forth four issues for our review, however, his arguments can be combined into the following two claims:

> I. Did the trial court err in denying Appellant's motion for judgment of acquittal where the Commonwealth's evidence was insufficient to sustain Appellant's convictions for aggravated assault and carrying a firearm without a license?

II. Did the trial court err in denying Appellant's post-sentence motion for a new trial where the Commonwealth failed to timely disclose medical records of the victim, thus constituting either a discovery violation or a violation of *Brady v. Maryland*, 373 U.S. 83 (1963)?

*See* Appellant's Brief at 3.

We have reviewed the certified record, the briefs of the parties, and the applicable law. Additionally, we have reviewed the thorough opinion of The Honorable Jill E. Rangos of the Court of Common Pleas of Allegheny County. We conclude that Judge Rangos's well-reasoned opinion correctly disposes of the issues presented by Appellant. Accordingly, we adopt her opinion as our own and affirm Appellant's judgment of sentence on that basis.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/16/2017

- 2 -

# IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA

v.

GREGORY LUSTER

Appeal of:

GREGORY LUSTER,

Appellant

CRIMINAL DIVISION

CC No. 201310391

**OPINION**

Honorable Jill E. Rangos
Room 533
436 Grant Street
Pittsburgh, PA 15219

Copies to:

Joseph Rewis
438 South Main Street
Floor 2
Pittsburgh, PA 15220

Michael Streily
Office of the District Attorney
401 County Courthouse
436 Grant Street
Pittsburgh, PA 15219

FILED
16 SEP 14 PM 1:12

IN THE COURT OF COMMON PLEAS OF ALLEGHENY COUNTY, PENNSYLVANIA

COMMONWEALTH OF PENNSYLVANIA      CRIMINAL DIVISION

v.      CC No. 201310391

GREGORY LUSTER

Appeal of:

GREGORY LUSTER,

Appellant

## OPINION

RANGOS, J.          September 14, 2016

On September 19, 2014, Appellant, Gregory Luster, was convicted by a jury of two counts of Aggravated Assault[1] and one count of Carrying a Firearm Without a License.[2] This Court found appellant guilty of Person Not to Possess a Firearm.[3] This Court sentenced Appellant on February 6, 2015, to a term of 120 to 240 months at Count One (Aggravated Assault) count, and a consecutive term of three years probation on the Carrying a Firearm Without a License count. On July 27, 2015, Appellant filed a Post-Conviction Relief Act (PCRA) Petition. On January 19, 2016, this Court granted the PCRA Petition and reinstated post-sentence and appellate rights. This Court denied Appellant's Post-Sentence Motion on March 30, 2016. Appellant filed a Notice of Appeal on April 19, 2016 and his Statement of Errors Complained of on Appeal on May 10, 2016.

---

[1] 18 Pa.C.S. §§2702 (a) (1) and 2702 (a) (4), respectively.
[2] 18 Pa.C.S. § 6106.
[3] 18 Pa.C.S. § 6105 (a) (1).

## MATTERS COMPLAINED OF ON APPEAL

Appellant alleges four errors on appeal. Appellant alleges that the verdicts were against the weight of the evidence and that the Court erred in denying the motion for acquittal. Next, Appellant alleges that the Commonwealth engaged in misconduct by withholding medical records of the victim and this Court erred in denying the motion for a new trial based on the *Brady* violation. (Statement of Errors to be Raised on Appeal, p. 7)

## SUMMARY OF THE EVIDENCE

At trial, Rashawn Hall, the victim in this case, testified that on July 11, 2013, he went to Howlers Bar with his cousin Michael Richardson. (Transcript of Jury Trial of September 18-19, 2014, hereinafter, TT, at 45-46) They left Howlers on foot to go to an after-hours establishment called Castle. (TT 46) On the way to Castle a man Hall did not recognize got out of his car and asked Hall if he knew a girl named Ashley Grooms. (TT 47) The man in the car specifically inquired whether Hall and Ashley were romantically involved.[4] (TT 48) Hall denied dating Ashley. (TT 52) The conversation between Hall and the man in the car quickly turned to an argument. (TT 51) The man in the car started to get out of the car but was restrained by the driver. *Id.* Richardson pulled Hall away and the two of them went into Castle. *Id.*

Hall and Richardson left Castle at approximately 3:45 a.m. after having spent ninety minutes inside. (TT 53) Hall had been consuming alcohol earlier but did not have any drinks at Castle. (TT 54) Hall testified that the same gray car approached him while he and Richardson were walking home.

---

[4] Hall testified that he and Ashley had been in a non-exclusive relationship. *Id.* He said that Ashley told him that she had a child with a man named Greg but that she and Greg were no longer together. (TT 49)

3

*Id.* The same man that he had previously encountered got out of the car, said "talk that shit now," and shot Hall in the leg. (TT 54-55) Richardson ran off, then doubled back and called the police after the shooter left the scene. (TT 56)

Hall failed to identify Appellant as the shooter at trial. *Id.* However, Hall did recall his prior testimony at the preliminary hearing that Appellant was the shooter. (TT 57) At trial, Hall testified that the shooter was taller than and had a lighter complexion than Appellant. *Id.* Hall testified that his view of Appellant at the preliminary hearing was obstructed by three police officers. (TT 59) Hall also testified that he told police officers at the hospital where he had been taken that he thought his shooter's name was Greg and that Greg lives on the hill. *Id.* Hall gave a physical description of the shooter while he was at the hospital. (TT 61) He said the man stood approximately five foot, ten inches tall, was "pudgy and soft looking," with dark skin. *Id.* Hall was initially unable to identify the shooter from the photo array. (TT 62) Hall testified that he later texted Detective Daniel Zeltner, "Sorry, I couldn't say it was him, I at the hospital, I never be allowed back in my neighborhood." *Id.* Hall testified that he was shown a photo array a second time, outside the presence of others, and identified Appellant as the person who had shot him. (TT 64) Hall explained at trial that he chose Appellant because Detective Zeltner said "That's Gregory Luster, did he shoot you." (TT 65)

Next, Hall testified that he wrote a letter on October 8, 2013 requesting that all charges against Appellant be dropped. (TT 78-79) Ashley's mother, Donna Grooms, drove Hall to the Public Defender's Office to deliver the letter. (TT 80) Hall testified that he told an assistant district attorney on January 10, 2015 that he had been threatened and stated, "This has to go away." (TT 82) He denied that he told Detective Zeltner that Ashley asked him to drop the charges. *Id.* Hall stated that he told Detective Zeltner that he was afraid that word would get back to his cell block if he testified. (TT 83) He said he didn't want "paperwork back to the block." *Id.* In March of 2015, Hall told

4

Detective Zeltner that Hall was given a letter saying "he should not be a snitch, that the cops are not your family." (TT 85)

City of Pittsburgh Police Officer Donald Snider testified that he was the first officer at the scene and observed that Hall had been shot in both legs. (TT 125-126) Officer Snider later interviewed Hall at the hospital. (TT 127) Hall told the officer that Greg shot him after the two had an argument over Ashley Grooms. *Id.*

Detective Zeltner also interviewed Hall at the hospital. (TT 133) Detective Zeltner testified that Hall "had gone to the after-hours club. He had an argument with a male named Greg over Ashley Grooms. He was just—as he was walking home, he was shot." *Id.* Hall further told Detective Zeltner that Greg was the father of Ashley Grooms' child. (TT 134) Detective Zeltner testified that Hall gave a physical description of Greg to the Detective, saying he was "about 5'10", soft and pudgy, dark skin." (TT 135) Detective Zeltner testified that Appellant matched the physical description which Hall provided. (TT 137)

Detective Zeltner testified that he showed Hall a photo array on two occasions. The Detective initially showed Hall a photo array at the hospital. *Id.* An individual unknown to the Detective was present with Hall at the time, and Hall did not choose anyone from the array. (TT 137-138) Hours after the initial array, Hall texted the Detective to tell him that Hall couldn't identify his assailant with the unidentified person in his hospital room. (TT 138) Hall said that he did not want to be labeled a snitch. *Id.* Hall again told Detective Zeltner that Gregory Luster shot him. *Id.* When Hall was shown the array a second time with nobody else present, Hall identified Appellant by circling Appellant's photograph and initialing it. (TT 141)

Detective Zeltner further testified that he was present at a meeting between Hall and an assistant district attorney on January 10, 2014. (TT 146) At that meeting, Hall stated that he wanted the case to go away, not because Appellant didn't shoot him, but because Hall had received a phone

5

call that his son had been threatened. *Id.* Hall also indicated that Ashley asked him to drop the charges. (TT 147)

## DISCUSSION

Appellant's first allegation of error is that the "verdicts were against the weight of the evidence as the evidence was legally insufficient to find Appellant guilty." (Statement of Errors to be Raised on Appeal, p. 7) It is unclear from the above statement whether Appellant is raising a challenge to the sufficiency or the weight of the evidence. The standard for a "weight of the evidence" claim is as follows:

> Whether a new trial should be granted on grounds that the verdict is against the weight of the evidence is addressed to the sound discretion of the trial judge, and [her] decision will not be reversed on appeal unless there has been an abuse of discretion.... The test is not whether the court would have decided the case in the same way but whether the verdict is so contrary to the evidence as to make the award of a new trial imperative so that right may be given another opportunity to prevail.

*Commonwealth v. Taylor*, 471 A.2d 1228, 1230 (Pa.Super. 1984). *See also, Commonwealth. v. Marks*, 704 A.2d 1095, 1098 (Pa.Super. 1997) (citing *Commonwealth v. Simmons*, 662 A.2d 621, 630 (Pa. 1995)).

In contrast, the test for reviewing a sufficiency of the evidence claim is:

> [W]hether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the jury could reasonably have determined all elements of the crime to have been established beyond a reasonable doubt... This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Hardcastle*, 546 A.2d 1101, 1105 (Pa. 1988) (citations omitted).

Furthermore, it appears that Appellant's first and second issues are related. Appellant alleges in his second issue that this Court "erred in [denying] the motion for acquittal as a result of a verdict that was against the weight of the evidence." (Statement of Errors to be Raised on Appeal, p. 7)

6

Based on Appellant's wording of the issues it appears that Appellant is challenging the weight and not the sufficiency of the evidence.

Appellant's challenge to the weight of the evidence is waived.

[A] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing. Pa.R.Crim.P. 607; Commonwealth v. Priest, 18 A.3d 1235, 1239 (Pa.Super.2011). Failure to properly preserve the claim will result in waiver, even if the trial court addresses the issue in its opinion. *Commonwealth v. Sherwood*, 982 A.2d 483, 494 (Pa. 2009).

Appellant failed to raise the issue in his Post-Sentence Motion, by written motion before sentencing, or orally prior to sentencing. Therefore, the issue is waived.

Had the weight of the evidence issue been properly preserved, Appellant's claim would have failed on its merits. This verdict is not so contrary to the evidence as to require a new trial. The evidence can reasonably be interpreted that the victim identified Greg, the father of Ashley Grooms' baby, as his assailant shortly after the shooting. Other contextual evidence supports his original identification. Hall become manipulated by the Grooms family and intimidated by one or more other individuals and recanted. The finder of fact was free to believe the earlier version of Hall's story and not the latter.

Likewise, any claim to the sufficiency of the evidence must fail. Aggravated assault is defined, in relevant part, as follows:

**(a) Offense defined.**--A person is guilty of aggravated assault if he:

(1) attempts to cause serious bodily injury to another, or causes such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life;

(4) attempts to cause or intentionally or knowingly causes bodily injury to another with a deadly weapon;

18 Pa.C.S. § 2702(a) (1), (4). Person Not to Possess a Firearm is defined as:

**(a) Offense defined.**--

7

(1) A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control, sell, transfer or manufacture or obtain a license to possess, use, control, sell, transfer or manufacture a firearm in this Commonwealth.

18 Pa.C.S. § 6105. Carrying a Firearm Without a License is defined as:

**(a) Offense defined.—**

(1) Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.

18 Pa.C.S. § 6106.

The key element in each of these offenses is whether or not the Commonwealth established beyond a reasonable doubt that Appellant was the shooter. Prior to Hall's recantation, he verbally identified Appellant as the shooter and identified him through a photo array. He provided a physical description of his assailant that matched Appellant. Again, other contextual evidence supports his identification. The combination of these facts permit the trier of fact to conclude beyond a reasonable doubt that Appellant shot Hall.

Turning to Appellant's remaining issues, Appellant alleges that the Commonwealth committed a *Brady* violation by withholding the victim's medical records and that this Court erred in denying a motion for a new trial based on this violation. It appears from the record that the Commonwealth became aware mid-trial that it had not provided counsel for Appellant with all of Hall's medical records. (TT 117) The Commonwealth provided the records immediately and counsel for Appellant reviewed them and elected to proceed with the trial. (TT 119, 123)

Arguably, this issue is waived. Trial counsel for Appellant, after raising a *Brady*-type claim that he was not provided potentially exculpatory medical records of the victim before

8

trial, also stated after reviewing these records that Appellant was comfortable proceeding and that the issue did not rise to the level for a mistrial. (TT 123) Since counsel for Appellant failed to request either a mistrial or a continuance for further time to review the victim's medical records, this Court may reasonably conclude that no additional time or strategy was needed to address this additional evidence. *Commonwealth v. Jones,* 668 A.2d 491 (Pa. 1995).

In addition, Appellant's reference to *Brady* is misplaced. *Brady* refers to information which is withheld during a trial, not evidenced disclosed during trial. *Commonwealth v. Causey,* 833 A2d. 165 (Pa. Super. 2003). Since the information was disclosed during trial, *Brady* does not apply.

Lastly, even under a *Brady* analysis, Appellant's claim of error is without merit. For a *Brady* violation, Appellant must establish:

(1) Evidence was suppressed by the Commonwealth, either willfully or inadvertently;
(2) The evidence was favorable to the defendant; and
(3) The evidence was material, in that its omission resulted in prejudice to the defendant.

*Commonwealth v. Dennis,* 17 A.3d 297, 308 (Pa. 2011). Appellant has not established materiality, and therefore fails the third prong of the *Brady* test. Appellant's suggestion that the evidence may have been helpful to impeach the victim's testimony or other exculpatory purposes is too remote and vague to establish materiality. *Commonwealth v. McGill,* 832 A.2d 1014, 1019 (Pa. 2003).

## CONCLUSION

For all of the above reasons, no reversible error occurred and the findings and rulings of this Court should be AFFIRMED.

BY THE COURT:

_____ J.
JILL E. RANGOS

9

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a true and correct copy of this OPINION was mailed to the following individuals by first class mail, postage prepaid on the 14th day of September, 2016.

Joseph Rewis
438 South Main Street
Floor 2
Pittsburgh, PA 15220

Michael Streily
Office of the District Attorney
401 County Courthouse
436 Grant Street
Pittsburgh, PA 15219

_____
James J. Robertson, Law clerk for Jill E. Rangos

10