**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**David MARKS, Appellant.**

Superior Court of Pennsylvania.

Argued Oct. 30, 1997.

Filed Dec. 18, 1997.

Samuel C. Stretton, West Chester, for appellant.

Stuart Magargee, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before CAVANAUGH, SCHILLER and MONTEMURO,* JJ.

MONTEMURO, Judge:

Appellant, David Marks, appeals from the July 23, 1996 orders entered in the Court of Common Pleas of Philadelphia County denying his post-trial motions and affirming his April 9, 1996 judgment of sentence. We affirm.

On September 22, 1993, Maurice Anthony was murdered. Appellant, the suspect in the case, fled to New York, where he committed, was arrested for, and plead guilty to two additional homicides.

He was returned to Pennsylvania where, after waiving his right to a jury trial, he was tried for Mr. Anthony's murder in a bench trial on March 18, 1996 and March 19, 1996, at the conclusion of which he was found guilty of third degree murder. On April 19, 1996, the trial court sentenced Appellant to the mandatory term of life in prison pursuant to 42 Pa.C.S. § 9715, given his New York homicide convictions.

After the trial court denied his post-trial motions and affirmed his judgment of sentence on July 23, 1996, Appellant filed this timely appeal.

Appellant raises the following issues: (1) the evidence was insufficient to sustain a guilty verdict and the verdict was against the weight of evidence, and (2) a sentence of mandatory life imprisonment pursuant to 42 Pa.C.S. § 9715 is improper because this statute was not intended to apply when the crime triggering the statute occurred subse-

* Retired Justice assigned to Superior Court.

quent to the crime for which the life sentence is being imposed, and because application of the provision under such circumstances violates due process of law.

The testimony at trial developed as follows: On September 23, 1993, Detective Denis Graeber was assigned to investigate a possible crime scene at 1107 West Tioga Street, Philadelphia, where Appellant's mother found a dead body. Upon arrival, the Detective climbed the stairs to the second floor of the home where he observed four bedrooms linked by a hallway. Large amounts of blood stained the walls and floors of all but the back bedroom. In the front bedroom, next to a disconnected telephone, Detective Graeber found the deceased Mr. Anthony, with his head soaked in blood, leaning against a blood stained mattress. Outside of this bedroom, the Detective found a bloody sledgehammer and glove. Also located around the house were a loaded, sawed-off shotgun in the unlocked first floor closet, as well as a steak knife and tire iron in the second floor rear bedroom. The detective testified that the evidence at the scene indicated that an altercation began in the rear bedroom and progressed to the front of the house. Following his crime scene investigation, Detective Graeber obtained a warrant for Appellant's arrest. Appellant was not immediately apprehended, however, since he had fled to New York, where, after being arrested on an unrelated charge, he gave four different accounts of the Pennsylvania incident.

While a fugitive in New York, Appellant committed two homicides. In separate proceedings he pleaded guilty to both, receiving sentences of 20 years to life and 8½ to 25 years imprisonment.

Dr. Edwin Lieberman, Assistant Medical Examiner, testified that an examination of the victim revealed numerous lacerations to the top, side and back of the Mr. Anthony's head caused by approximately 12 separate blows that could have been delivered by an individual wielding an instrument similar to the sledgehammer found at the scene. He concluded that the manner of death was homicide caused by acute blood loss due to blunt force injuries to the head. On cross-examination, Dr. Lieberman testified that be-

cause there was no internal bleeding on the brain and the skull was not fractured, it was unlikely that Mr. Anthony suffered the full force of a blow from the sledgehammer.

 Appellant first claims that the evidence was insufficient to support a verdict and that the conviction was against the weight of evidence. When reviewing a sufficiency of the evidence claim, this Court must view the evidence and all reasonable inferences to be drawn from the evidence in the light most favorable to the Commonwealth as verdict winner and determine if the evidence was sufficient to enable the fact-finder to establish all the elements of the offense. *Commonwealth v. Rios*, 546 Pa. 271, 279, 684 A.2d 1025, 1028 (1996). As such, when reviewing for sufficiency of the evidence, this Court may not substitute its judgment for that of the factfinder; if the record contains support for the verdict, it may not be disturbed. *Commonwealth v. Mudrick*, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986).

 The finding of the trial court as to whether the verdict is against the weight of evidence may not be disturbed absent an abuse of discretion. *Commonwealth v. Sanders*, 426 Pa.Super. 362, 367–68, 627 A.2d 183, 185, *allocatur denied*, 535 Pa. 657, 634 A.2d 220 (1993). This determination requires the court to assess the credibility of the testimony offered by the Commonwealth. *Commonwealth v. Tapper*, 450 Pa.Super. 220, 224, 675 A.2d 740, 742 (1996). However, generally "[t]he weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." *Commonwealth v. Simmons*, 541 Pa. 211, 229, 662 A.2d 621, 630 (1995). As such, this Court may not reverse the verdict unless it is "so contrary to evidence as to shock one's sense of justice." *Id.* After reviewing the evidence under these standards, we conclude that the verdict of third degree murder was supported by the evidence and consistent with the weight of the evidence.

 In support of these claims regarding the sufficiency and weight of evidence, Appellant first contends that he acted in self-defense or in the mistaken belief of self-

defense. The Commonwealth must disprove a claim of self-defense beyond a reasonable doubt. *Commonwealth v. Brown,* 538 Pa. 410, 417, 648 A.2d 1177, 1180 (1994). A successful claim of self-defense negates the malice element of third degree murder. *Commonwealth v. Gonzales,* 415 Pa.Super. 564, 569, 609 A.2d 1368, 1370 (1992). To disprove a claim of self-defense, the Commonwealth must show any one of the following: "(1) the defendant's belief that it was necessary to kill the victim in order to protect himself from death or serious bodily harm was unreasonable; (2) the defendant provoked the use of force; or (3) the defendant had a duty to retreat and could safely do so." *Id.* If the defendant actually, but unreasonably, .believed that deadly force is necessary, then he or she is guilty of voluntary manslaughter. *Commonwealth v. Mehmeti,* 501 Pa. 589, 597, 462 A.2d 657, 661 (1983).

■ In the instant case, the evidence easily supports a finding that Appellant neither reasonably nor actually believed that deadly force was necessary. First, in two of his accounts, he admitted that he went after his unarmed victim and struck him several times with the sledgehammer. In exercising its role as evaluator of credibility, the trial court chose to believe Appellant's earlier version of events, as opposed to those accounts in which he claimed variously that Mr. Anthony initially wielded the sledgehammer, or in that they both grabbed for the weapon: "[t]he court, which is free to believe all, part, or none of the testimony, chose to believe those portions of [Appellant's] pretrial statements in which he admitted ... that he attacked Mr. Anthony, after the fight was over and struck him with the hammer." (Trial Ct. Op. at 6). Further, the medical examiner testified that several of the lacerations were on the back of Mr. Anthony's head, indicating that when those blows were struck, Mr. Anthony posed no real or imagined threat to Appellant.

In support of his self-defense argument, Appellant cites evidence of a struggle. Someone in the process of receiving 12 blows from a sledgehammer, however, could be expected both to offer some degree of resistance and to attempt to evade the danger. These expected reactions, coupled with the inference that at some point Mr. Anthony's back was to Appellant, negate Appellant's claim that the evidence of a struggle necessarily supports self-defense, and also accounts for the fact that the blows did not crush Mr. Anthony's skull.

In addition, Appellant contends that the testimony of Detective Graeber indicating that the struggle began in the rear bedroom, and the fact that Appellant used the sledgehammer and not one of the other available weapons, both support those of his statements advancing his claims of self-defense and heat of passion. This conclusion is simply incorrect. The trial judge was not required to believe completely any one statement as his role was to sort through all of the evidence and arrive at a determination as to what actually happened. In so doing, the court concluded that "[t]his brutal attack by [Appellant] was absolutely unnecessary and in no way justified by any action taken by the victim." (Trial Ct. Op. at 6).

■ Appellant also contends that he acted under serious provocation, and, therefore, should only have been convicted of voluntary manslaughter. The test for a heat of passion defense used to reduce the degree of the offense is "whether a reasonable man, confronted with the same series of events would become impassioned to the extent that his mind would be incapable of cool reflection." *Commonwealth v. Rivers,* 383 Pa.Super. 409, 417, 557 A.2d 5, 9 (1989). Further, if sufficient provocation exists, the fact-finder must determine whether the defendant actually acted in the heat of passion. *Id.* The trial court was free to believe any or none of three different potentially provoking acts by Mr. Anthony that Appellant recited in his four different versions of the facts: Mr. Anthony slept with Appellant's girlfriend, accused him of stealing drugs, or taunted him to use the hammer. Also, the decision rested with the trial judge in his role as fact-finder to determine whether any of these would incite a reasonable person. In reaching its conclusion, the trial judge obviously chose to disbelieve the statements regarding provocation, and determined that what, if anything,

incited Appellant was not adequate provocation, or concluded that Appellant was not acting in the heat of passion when he killed Mr. Anthony.

 We now turn to whether, given that malice was not negated, the Commonwealth established malice beyond a reasonable doubt. *Gonzales*, 415 Pa.Super. at 569, 609 A.2d at 1370. Malice is a necessary element of proof to support a conviction of murder in the third degree. *Commonwealth v. Tolbert*, 448 Pa.Super. 189, 203, 670 A.2d 1172, 1179 (1995). Malice exists where there is particular ill will, and also where there is a wickedness of disposition, hardness of heart, wanton conduct, cruelty, recklessness of consequences and a mind without regard for social duty. *Commonwealth v. Melechio*, 442 Pa.Super. 231, 235, 658 A.2d 1385, 1388 (1995). Malice may be inferred from the use of a deadly weapon upon a vital part of the body. *Commonwealth v. Mercado*, 437 Pa.Super. 228, 245, 649 A.2d 946, 955 (1994).

 The evidence demonstrated that during the fight with his victim, Appellant grabbed a sledgehammer and repeatedly hit Mr. Anthony with it, producing twelve lacerations to the top, back and side of Mr. Anthony's head. This evidence easily demonstrates malice. Therefore, we find that the evidence was sufficient to sustain a conviction of third degree murder and that the verdict was not so contrary to the evidence so as to "shock one's sense of justice". *Simmons*, 541 Pa. at 229, 662 A.2d at 630.

Appellant also argues that the trial court mistakenly used two New York homicide convictions, the commission of which occurred subsequent to the commission of the crime in the instant case, to sentence him to life imprisonment pursuant to 42 Pa.C.S. § 9715.

Under the Statutory Construction Act, 1 Pa.C.S. §§ 1501–1991, "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." *Id.* at § 1921(b). The statute in question, 42 Pa. C.S. § 9715, reads, in pertinent part:

§ 9715. **Life imprisonment for homicide**

(a) **Mandatory life imprisonment.**— Notwithstanding the provisions of section 9712 (relating to sentences for offenses committed with firearms), 9713 (relating to sentences for offenses committed on public transportation) or 9714 (relating to sentences for second and subsequent offenses), any person convicted of murder of the third degree in this Commonwealth who has previously been convicted *at any time* of murder or voluntary manslaughter in this Commonwealth or of the same or substantially equivalent crime in any other jurisdiction shall be sentenced to life imprisonment, *notwithstanding any other provision of this title or other statute to the contrary.*

(b) **Proof at sentencing.**—Provisions of this section shall not be an element of the crime and notice thereof to the defendant shall not be required prior to conviction, but reasonable notice of the Commonwealth's intention to proceed under this section shall be provided after conviction and before sentencing. *The applicability of this section shall be determined at time of sentencing.*

42 Pa.C.S. § 9715 (emphasis added).

 We previously interpreted this statute in *Commonwealth v. Gonzales*, 415 Pa.Super. 564, 609 A.2d 1368 (1992), in which we stated the following:

The above-cited subsections of § 9715 are clear and unambiguous. Subsection (b) clearly states that § 9715 becomes applicable at the time of sentencing. Thus, if at that time, the defendant's record shows a prior conviction for murder or voluntary manslaughter which occurred at any time, that person shall be sentenced to a term of life imprisonment. "At any time" refers not only to a prior conviction which may have occurred more than seven years prior to the sentencing offense, but also clearly means that *the order of commission, or conviction, of the offenses requiring a life sentence is immaterial so long as, at time of sentencing on a third degree murder conviction, a defendant has been convicted*

*on another charge of murder or voluntary manslaughter.* The plain language of § 9715(a) and (b) cannot be interpreted otherwise.

*Id.* at 575, 609 A.2d at 1373 (emphasis added). Appellant dismisses this Court's language in *Gonzales* on the grounds that the facts differ slightly from those in the instant case in that the sequence of events in *Gonzales* progressed differently than in his own. However, in *Gonzales,* we correctly read the clear language of the statute to mean that "the order of commission, or conviction, of the offenses requiring a life sentence is immaterial." *Id.* Therefore, given the undisputed fact that at the time of sentencing Appellant possessed two prior homicide convictions, the trial court properly applied the statute in sentencing him to life imprisonment. To do otherwise would elevate form over function.

Appellant also contends that the statute is an enhanced recidivist statute, intended by the legislature to punish more severely one who refuses to alter his or her conduct after correction. In furtherance of his recidivist interpretation, Appellant discusses *Commonwealth v. Dickerson,* 533 Pa. 294, 621 A.2d 990 (1993), in which the Pennsylvania Supreme Court interpreted the mandatory 5 year recidivist statute, 42 Pa.C.S. § 9714. We first note that the language of the statute challenged in the instant case, 42 Pa.C.S. § 9715, clearly states that it is to be read "[n]otwithstanding the provisions of section ... 9714." Even so, *Dickerson* is distinguishable. The general recidivist statute, 42 Pa.C.S. § 9714, interpreted in *Dickerson* applies to murder, involuntary manslaughter, rape and other serious offenses. An enhanced sentence applies when the person has "previously been convicted of a crime of violence" as enumerated in subsection (b). 42 Pa.C.S. § 9714(a). Subsection (b) of the statute contains the following time limitation:

(2) The previous conviction occurred *within seven years of the date of the commission of the instant offense,* except that any time during which the offender was incarcerated in any penitentiary, prison, or other place of detention shall not be consid-

ered in computing the relevant seven-year period.

42 Pa.C.S. § 9714(b)(2) (emphasis added).

In *Dickerson,* the defendant committed two rapes on the same day and was subsequently convicted of both. A dispute arose over whether § 9714 applied only where the first conviction preceded commission of the second offense or whether it also applied where the first conviction merely preceded sentencing on the second offense. The Supreme Court stated:

The dispute arises because the legislature apparently did not consider the anomaly posed by appellee's criminal behavior. In cases of recidivism, we expect the following sequence of events: first offense, first conviction, first sentencing, second offense, second conviction, second sentencing. In such a situation, the legislature provided that the mandatory minimum sentence would be imposed at the second sentencing if the first conviction occurred within seven years prior to the commission of the second offense. If the first conviction occurred more than seven years before the second offense, the legislature did not consider the criminal sufficiently blameworthy to merit the enhanced minimum sentence. The sequence of events in this case, however, was: first offense, second offense, first conviction, first sentencing, second conviction, second sentencing. We hold that, in this sequence, the mandatory minimum sentencing statute does not apply because the first conviction did not occur within seven years prior to the commission of the second offense.

*Dickerson,* 533 Pa. at 298, 621 A.2d at 992. Thus, as the Supreme Court explained in *Commonwealth v. Williams,* 539 Pa. 249, 652 A.2d 283 (1994), the *Dickerson* decision applied the recidivist philosophy to construe a statute which was "ambiguous as to whether a prior conviction must have preceded *commission* of the second offense or whether the prior conviction merely must have preceded *sentencing* for the latter offense". *Id.* at 252, 652 A.2d at 285. The Court further explained that

[t]he "recidivist philosophy," however, is not a constitutional principal or mandate,

and the legislature is therefore free to reject or replace it when enhancing recidivist sentencing legislation. If the legislature enacts a statute which clearly expresses a different application, the "recidivist philosophy" possesses no authority which would override clearly contrary statutory language.

*Id.*

 In light of this conclusion, we find the recidivist philosophy to be inapplicable here as the Legislature clearly intended to subject an individual possessing a *conviction* equivalent to third degree murder or voluntary manslaughter at the time of sentencing to mandatory life imprisonment. We also note that beyond rehabilitation, the purposes of punishment include, *inter alia*, retribution and the removal of dangerous individuals from the society. In this statute, the legislature has singled out repeat murderers as particularly dangerous individuals and treated them accordingly.

 Next, Appellant asserts that he was denied due process of law because at the time he committed the Pennsylvania murder, he did not have notice that the enhanced sentence applied. However, at the time he committed the Pennsylvania murder, he did have notice that his actions were proscribed by law. Further, the existence of the sentencing statute serves as notice. If he had not committed the New York murders, he would not be subject to this statute. Although Appellant claims that this rationale does not apply because he is being sentenced for his first homicide offense, this presentation of the facts fails to illustrate the circumstances adequately. He is being sentenced for his first homicidal act, but in addition, for his third homicide conviction. At the time of sentencing for this third conviction, his record contained several other homicide convictions demonstrating that he is particularly dangerous to society, and, thus, warrants a longer term of imprisonment.

 Appellant also claims § 9715 violates due process in that it allows for arbitrary action by the prosecutor who can delay prosecution to await a conviction for another murder, and then take advantage of the enhanced sentencing law. Such an argument carries no merit in the instant case because Appellant, not the prosecutor, caused the delay by fleeing Pennsylvania to avoid prosecution for his first homicidal act. Moreover, we note that had he not eluded prosecution in this jurisdiction, he might not have committed the other two murders and would not be subject to the statute.

Finally, Appellant argues that 42 Pa.C.S. § 9715 is unconstitutionally "vague" and "overbroad". This court, however, has already held that the language of § 9715 is clear and thus does not violate due process. *Commonwealth v. Lark*, 350 Pa.Super. 558, 574, 504 A.2d 1291, 1299 (1986); *Commonwealth v. Scott*, 345 Pa.Super. 86, 89, 497 A.2d 656, 657 (1985). Therefore, Appellant's argument that the statute violates due process fails.

Accordingly, for the foregoing reasons, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.