J-S28023-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| MAURICE ANDREWS | |
| Appellant | No. 598 EDA 2015 |

Appeal from the Judgment of Sentence October 7, 2014
In the Court of Common Pleas of Montgomery County
Criminal Division at No(s): CP-46-CR-0004380-2013

BEFORE: BOWES, J., LAZARUS, J., and PLATT, J.[*]

MEMORANDUM BY LAZARUS, J.: **FILED APRIL 15, 2016**

Maurice Laverne Andrews appeals from the judgment of sentence entered in the Court of Common Pleas of Montgomery County following a jury trial in which he was convicted of third-degree murder,[1] conspiracy to commit third-degree murder,[2] firearms not to be carried without a license,[3] and criminal trespass.[4] Andrews challenges the trial court's denial of his

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. § 2502(c).

[2] 18 Pa.C.S. § 903(a)(1).

[3] 18 Pa.C.S. § 6106(a)(1).

[4] 18 Pa.C.S. § 3503.

suppression motion, as well as the sufficiency of the evidence and discretionary aspects of sentencing. After careful review, we affirm.

The trial court summarized the facts of this matter as follows:

[A]t approximately 1:30 a.m. on March 22, 2013, [Andrews] and his cousin and co-conspirator – Michael Romain Hinton – arrived in the vicinity of Brian's Café, a bar located in Pottstown, Montgomery County, Pennsylvania, with the purpose of confronting Victor "Short Man" Baez. [Andrews] was armed with a 9[]mm Glock handgun, and Hinton was armed with a .357 Smith & Wesson revolver. The pair lay in wait for [Baez], ambushing him when he exited the bar shortly after 2:00 a.m. While [Baez] struggled with Hinton for control of Hinton's revolver, [Andrews] shot [Baez] five times, killing him. Hinton was also hit by [Andrews'] gunfire and was wounded in the leg and hand.

Hinton's .357 Smith & Wesson revolver was discovered lying next to the body of [Baez]. [Andrews'] 9[]mm Glock was never recovered. [Andrews] and Hinton fled the scene separately. The wounded Hinton was apprehended several hours later on the streets of Pottstown and was transported to Reading Hospital, following which he gave several statements to police in which he implicated [Andrews] as the shooter. [Andrews] left the area following the shooting, and was ultimately arrested in Philadelphia at the home of his Aunt – Danielle "Dee" White – on April 18, 2013. It was the Commonwealth's theory of the case that [Baez] was murdered because [Andrews] had previously engaged in a botched robbery and kidnapping of [Baez's] nephew, and [Andrews] was afraid that [Baez] planned to retaliate against him.

Trial Court Opinion, 7/29/15, at 1-2.

After Hinton was released from Reading Hospital on the afternoon of March 22, detectives transported him to the Pottstown Police Department where they recorded a statement. Hinton's statement to Detective Richard was read to the jury during trial.

- 2 -

Although the 9 mm Glock used in the killing of Baez was never recovered, conversations recorded while Andrews was incarcerated at the Montgomery County Correctional Facility (MCCF) indicated that Andrews planned to discuss the location of the missing firearm with his mother, Julia White, when they met in person in a holding room of District Court 38-1-11 in Pottstown on May 10, 2014. Based on this information, the Commonwealth sought and obtained an order from this Court authorizing the interception and recording of Andrews' conversation with his mother at the district court. The Commonwealth sought to present the recorded conversation into evidence. Andrews filed a pretrial motion to suppress this evidence, the disposition of which was summarized by the trial court, as follows:

> On January 17, 2014, [Andrews] filed an omnibus pre-trial motion contending, *inter alia*, that the intercepted conversation should be suppressed pursuant to 18 Pa.C.S. § 5721.1. More specifically, [Andrews] claimed in his motion that the interception should be suppressed because:
>
> a) It was not supported by probable cause;
>
> b) The May 8, 2013 order of the Honorable James J. Fitzgerald, III, of the Superior Court of Pennsylvania that authorized the interception was materially insufficient on its face; and
>
> c) The interception materially deviated from the requirements of the order of authorization.
>
> A hearing on [Andrews'] motion to suppress was held before the undersigned on February 18, 2014. During the course of this hearing defense counsel withdrew [Andrews'] claim that the interception materially deviated from the requirements of the order of authorization. Counsel stated that his argument,

instead, was that "the Affidavit of Probable Cause lacked sufficient facts to support the granting of the wiretap order" and that the information that *was* in the affidavit was stale because it related to conversations engaged in by [Andrews] on and before April 24, 2013, and the interception authorized did not take place until May 10, 2013. The affidavit was entered into evidence as CS-1.

Trial Court Opinion, 7/29/15, at 19-20 (citations omitted). The trial court denied Andrews' motion to suppress.

After a five-day trial, a jury found Andrews guilty of third-degree murder, conspiracy to commit third-degree murder, firearms not to be carried without a license, and criminal trespass. On October 7, 2014, Andrews was sentenced to an aggregate term of thirty-five to seventy years' incarceration, including consecutive sentences of twenty to forty years' incarceration for third-degree murder and fifteen to thirty years for conspiracy to commit third-degree murder, as well as a concurrent sentence of one to two years for firearms not to be carried without a license.[5] The trial court imposed no further penalty on Andrews' criminal trespass conviction. The trial court denied Andrews' post-sentence motions on February 6, 2015, and Andrews filed a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b) on March 24, 2015.

_____

[5] Andrews was also sentenced to one to two years' incarceration for possession with intent to distribute and one to two years' incarceration for possession of a firearm with an obliterated serial number. These sentences stemmed from guilty pleas entered by Andrews and were ordered to run consecutively to his sentences for third-degree murder and conspiracy to commit third-degree murder, bringing his total aggregate sentence to thirty-seven to seventy-four years' incarceration. N.T. Sentencing, 10/7/14, at 32.

On appeal, Andrews raises the following issues for our review:

I.  [Whether the trial court] committed an error of law and abuse of discretion in failing to suppress the audio and video recording of [Andrews] and his [m]other Julia White because the Commonwealth's Application for Wiretap Authorization lacked probable cause and contained stale information.

II. [Whether the trial court] committed an error [of] law in denying [Andrews' post-sentence motion] for judgment of acquittal based upon the fact that evidence introduced at trial was not legally sufficient to support the verdict because the evidence failed to establish each material element of the crimes charged and the commission thereof by [Andrews] beyond a reasonable doubt.

   a. [Whether the] Commonwealth failed to present sufficient evidence that [Andrews] had committed the killing of Victor Baez with [m]alice.

   b. [Whether the] Commonwealth failed to present sufficient evidence that [Andrews] had entered into a [c]onspiracy with Michael Hinton to commit the [c]rime of [third-degree murder].

   c. [Whether the jury's verdict for conspiracy to commit third-degree murder was] contrary to [the] law and [whether] the Commonwealth failed to prove the specific intent to kill for [c]onspiracy.

III. [Whether, in] sentencing [Andrews], the [t]rial [c]ourt committed an abuse of discretion, whereby the sentence imposed by the court was unduly harsh and excessive and the court failed to take into account the mitigating factors presented at sentencing relating to [Andrews'] [a]ge and [c]hildhood.

Brief for Appellant, at 4-5.

First, we address whether the trial court abused its discretion by admitting audio and video evidence of Andrews' conversation with his

- 5 -

mother. Andrews contends that the Commonwealth's Application for Wiretap Authorization lacked probable cause and was based on stale information.

When reviewing a challenge to the denial of a suppression motion, our scope and standard of review is:

> whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. When reviewing the rulings of a suppression court, this Court considers only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. When the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the legal conclusions drawn therefrom are in error.

*Commonwealth v. Downey*, 39 A.3d 401, 405 (Pa. Super. 2012) (citation omitted).

Here, the Honorable James J. Fitzgerald, III,[6] issued an order on May 8, 2013 authorizing the interception of anticipated oral communications between Andrews and his mother at the district court in Pottstown on May 10, 2013. In that order, Judge Fitzgerald determined that there was probable cause to believe that communications between Andrews and his

---

[6] We recognize that this claim requires us to review a wiretap order issued by a member of this Court, and that it is generally improper for a judge to overrule an order by another judge of the same court in the same case. However, because jurisdiction for wiretap authorizations is vested in this Court by the Wiretapping and Electronic Surveillance Act, *see* 18 Pa.C.S.A. § 5708, the rule of necessity requires that we review such decisions when raised on direct appeal.

mother would "provide evidence of the commission of the murder of [Baez] as well as provide evidence aiding in the apprehension of the perpetrators responsible for the murder of [Baez]." Order, 5/8/13, at 2.

The trial court summarized the evidence contained in the affidavit of probable cause as follows:

> During the early morning hours of March 22, 2013, Corporal Stephen Hatfield of the Pottstown Police Department discovered the body of [Baez] lying in the street outside Brian's Café. An autopsy performed on the body of [Baez] determined that [Baez] was a homicide victim killed by multiple gunshot wounds. During processing of the crime scene, Montgomery County Detective Edward Schikel discovered six fired 9[]mm cartridge casings. During the course of interviews with law enforcement, [Hinton] stated that he and [Andrews] had gone to Brian's Café on March 22, 2013 because of a dispute between [Andrews] and [Baez], and that [Andrews] had told him that he wanted to kill [Baez]. Hinton also reported that [Andrews] was armed with a Glock 9 mm semi-automatic handgun, and that [Andrews] had shot [Baez].
>
> The affidavit of probable cause further averred that, between March 25, 2013[,] and April 18, 2013, the police were actively searching for [Andrews], and that Julia White told the police that, even if she knew where [Andrews] was, she would not tell the police.
>
> The affidavit averred that [Andrews] was arrested in Philadelphia on April 18, 2013, and remanded to [MCCF] without bail. While incarcerated at MCCF, [Andrews] was permitted to make telephone calls and to have visits with family members. [Andrews] was advised that these conversations would be monitored and recorded.
>
> The crux of the request for approval of interception of the anticipated meeting between [Andrews] and his mother on May 10, 2013[,] was the fact that the gun used in the killing of [Baez] had not been recovered, and the authorities' assertion that the lawfully-monitored conversations between [Andrews] and his family members between April 20, 2013[,] and April 24,

2013 established compelling reasons to believe that [Andrews] and his mother would discuss the location of that gun during their May 10, 2013 meeting.

On review of the affidavit, the undersigned found no reason whatever to reject Justice Fitzgerald's determination that the affidavit presented sufficient facts to support the interception of the May 10, 2013 conversation on this basis.

Stated directly, the affidavit contains transcriptions of multiple conversations between [Andrews] and family members during which – employing vague and coded language – [Andrews] discusses the location of an unidentified item at the residence of "Aunt D." This series of conversations culminates in a conversation taking place between [Andrews] and his mother on April 24, 2013, during a visit by [White] to her son in MCCF. During the course of this visit, [White] appears to castigate [Andrews] for his previous conversations with relatives on the telephone, and tells him: "I swear to God shut your f*cking mouth on the phones." When [Andrews] persists in trying to talk to her in vague language, [White] responds: "Don't try any codes. Don't . . . we'll talk at the hearing." [Andrews] replies: "Oh yeah, the hearing's next Thursday."

Trial Court Opinion, 7/29/15, at 20-22. Based on these facts, the trial court held that the wiretap authorization was supported by sufficient probable cause, and we agree.

Andrews also contends that the information contained in the Application for Wiretap Authorization and affidavit of probable cause was stale. Andrews' contention appears to be based on the fact that the conversation between Andrews and his mother occurred on May 10, 2013, while the wiretap authorization and affidavit of probable cause relied on conversations recorded on or before April 24, 2013. *See* Brief for Appellant, at 10. Andrews offers no other facts in support of this claim. Therefore, we hold that Andrews' challenge to the staleness of the information in the

wiretap authorization has not been fully developed and is therefore waived.

*See Commonwealth v. Samuel*, 102 A.3d 1001, 1005 (Pa. Super. 2014) (issue waived where appellant fails to develop argument and provide discussion of relevant authority).

Andrews next claims that the Commonwealth presented insufficient evidence to support his convictions for third-degree murder and conspiracy.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [finder] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Best*, 120 A.3d 329, 341 (Pa. Super. 2014) (citations omitted).

With respect to the crime of third-degree murder, our Supreme Court has stated:

> Section 2502 of the Crimes Code defines the three degrees of murder. This section sets forth the mens rea for first[-]degree murder, *see* 18 Pa.C.S. § 2502(a) (an intentional killing), and

- 9 -

defines second[-]degree murder as that occurring during the perpetration of a felony. **See id.**, § 2502 (b). Regarding third[-]degree murder, however, the statute simply states, "All other kinds of murder shall be murder of the third degree." **Id.**, § 2502 (c). Importantly, § 2502(c) does not set forth the requisite mens rea for third[-]degree murder; however, § 302(c) of the Crimes Code provides, "When the culpability sufficient to establish a material element of an offense is not prescribed by law, such element is established if a person acts intentionally, knowingly or recklessly with respect thereto." **Id.**, § 302(c).

Case law has further defined the elements of third-degree murder, holding:

> [T]o convict a defendant of the offense of third-degree murder, the Commonwealth need only prove that the defendant killed another person with malice aforethought. This Court has long held that malice comprehends not only a particular ill-will, but . . . [also a] wickedness of disposition, hardness of heart, recklessness of consequences, and a mind regardless of social duty, although a particular person may not be intended to be injured.

> **Commonwealth v. Santos**, 876 A.2d 360, 363 (Pa. 2005) (alteration in original) (internal citation, quotation, and emphasis omitted); **see also Commonwealth v. Drum**, 58 Pa. 9, 15 (1868) (defining malice as quoted above).

**Commonwealth v. Fisher**, 80 A.3d 1186, 1191 (Pa. 2013). This Court has previously found malice where the defendant has employed a deadly weapon;[7] where the defendant has attempted to conceal his crime or

---

[7] **See Commonwealth v. Marks**, 704 A.2d 1095 (Pa. Super. 1997).

- 10 -

destroy evidence;[8] and where the defendant has perpetrated a shooting motivated by a prior incident involving the victim or a relative.[9]

Andrews argues that the evidence at trial was insufficient to establish the elements of third-degree murder beyond a reasonable doubt. Brief for Appellant, at 11. Andrews contends that the Commonwealth's case was based solely on the testimony of his co-defendant, Hinton, and the Commonwealth offered "no credible collaborative evidence . . . that [Andrews] was responsible for the malicious killing of [Baez]." Brief for Appellant, at 13.

Here, we find that the evidence presented at trial was sufficient to establish that Andrews committed the third-degree murder of Baez. Specifically, the evidence was sufficient for a jury to find beyond a reasonable doubt that Andrews acted with a reckless disregard of the fact that his actions could cause death or serious injury when Andrews armed himself with a 9 mm Glock, laid in wait for Baez outside of Brian's Café, and then shot Baez several times. Hinton's testimony detailed how he and Andrews acquired firearms and travelled to Brian's Café with the intention of ambushing Baez. N.T. Trial, 6/25/14, at 142-44. Hinton also testified that Andrews had told him that he was scared that Baez was going to retaliate

---

[8] **See Commonwealth v. Gonzalez**, 858 A.2d 1219 (Pa. Super. 2004).

[9] **See Commonwealth v. Marquez**, 980 A.2d 145 (Pa. Super. 2009).

against him after his failed robbery of Baez's nephew. *Id.* at 139-41. Finally, Hinton described how, when Baez emerged from Brian's Café, Andrews shot him several times with a 9 mm Glock. *Id.* at 147.

Hinton's testimony was largely corroborated by the Commonwealth's other witnesses. Benjamin Alford, a prisoner on Andrews' cellblock, testified about a conversation he had with Andrews after his arrest. *See id.* at 68-54. Alford testified that Andrews told him that a man named "Vic" had been looking to retaliate against Andrews after Andrews' failed robbery attempt on his nephew. *Id.* at 61-63. Alford then related Andrews' statements about how he waited for "Vic" outside of a bar in Pottstown with his cousin and then shot "Vic" several times. *Id.* Saquanna Harrell, a cousin of Hinton, testified that she took a bus trip with Hinton and Andrews from Norristown to Pottstown on the night Baez was murdered. N.T. Trial, 6/24/14, at 147. Harrell also testified that Andrews led her and Hinton to an abandoned house, where Andrews armed himself and Hinton with firearms. *Id.* at 155-57.

In addition, the Commonwealth also presented telephone records establishing that Andrews' cell phone was in the vicinity of Brian's Café both shortly before and after Baez's death. N.T. Trial, 6/26/14, at 39-45. Several 9 mm shell casings were found at the scene of the murder and a 9 mm bullet was recovered from Baez's body. Additionally, Andrews' aunt, Dee White, testified that she observed Andrews with a handgun that was

similar in appearance to a 9 mm Glock shortly after the murder. N.T. Trial, 6/25/14, at 41-43.

Viewed in the light most favorable to the Commonwealth as verdict winner, *see Best*, *supra*, the trial court properly concluded that the Commonwealth presented evidence sufficient to establish that Andrews killed Baez and did so with malice. *See Fisher*, *supra*.

Next, Andrews contends that there was insufficient evidence at trial to convict him of conspiracy to commit third-degree murder. The Crimes Code defines criminal conspiracy, in relevant part, as follows:

> **(a) Definition of conspiracy.—**A person is guilty of conspiracy with another person or persons to commit a crime if with the intent of promoting or facilitating its commission he:
>
> > (1) agrees with such other person or persons that they or one or more of them will engage in conduct which constitutes such crime or an attempt or solicitation to commit such crime; or
> >
> > (2) agrees to aid such other person or persons in the planning or commission of such crime or of an attempt or solicitation to commit such crime.
>
> . . .
>
> **(e) Overt Act.—**No person may be convicted of conspiracy to commit a crime unless an overt act in pursuance of such conspiracy is alleged and proved to have been done by him or by a person with whom he conspired.

18 Pa.C.S. § 903(a), (e). Therefore, to sustain a conviction for criminal conspiracy, "the Commonwealth must establish that the defendant (1) entered into an agreement to commit or aid in an unlawful act with another person or persons, (2) with a shared criminal intent and, (3) an overt act

was done in furtherance of the conspiracy." *Fisher*, *supra* at 1190 (citations omitted).

Here, the trial court correctly noted that:

> *Fisher* specifically holds that, where the crime at issue is conspiracy to commit third-degree murder, there exists no requirement that the intended result of the conspiracy was the death of the victim. *Fisher* holds, rather, that for conspiracy to commit third-degree murder what is required is an agreement to engage in an intentional malicious act that results in death, *regardless* of whether death was the intended result.

Trial Court Opinion, 7/29/15, at 15-16. Based on this standard, the trial court properly concluded that there was sufficient evidence for the jury to determine beyond a reasonable doubt that Andrews and Hinton agreed to commit the criminal and malicious act of arming themselves with firearms and confronting Baez outside of Brian's Café.

Specifically, sufficient evidence was presented at trial that Andrews possessed the intent to carry out a malicious act, that he shared this intent with Hinton, and that he carried out an overt act in furtherance of the conspiracy. Andrews told Hinton that he wanted to kill Baez. Andrews then armed himself and Hinton and the two travelled to Brian's Café to carry out their plan to ambush Baez. Hinton then entered Brian's Café to determine whether Baez had arrived yet, while Andrews lay in wait outside of the bar. Furthermore, not only did Andrews and Hinton conspire to arm themselves with firearms and proceed to Brian's Café to ambush Baez, but Andrews actually shot Baez several times, causing his death.

Viewed in the light most favorable to the Commonwealth as verdict winner, **see Best**, **supra**, the trial court properly concluded that the Commonwealth presented sufficient evidence to establish that Andrews engaged in a conspiracy to commit third-degree murder.[10] **See Fisher**, **supra**.

_____

[10] Andrews also argues that a conviction for conspiracy to commit third-degree murder requires that the Commonwealth prove a "specific intent to kill." Our Supreme Court has squarely rejected the proposition that specific intent to kill is an element of conspiracy to commit third-degree murder:

> The absence of intent to kill does not preclude a defendant from being convicted of conspiracy to commit third-degree murder. Absence of specific intent is not an element of third-degree murder; the third-degree murder statute does not list elements or specify a requisite mens rea, but rather categorizes this degree of homicide as "[a]ll other kinds of murder" not falling within the definition of first or second degree murder. 18 Pa.C.S. § 2502(c).
>
> . . .
>
> If a defendant acts with his co-conspirators in brutally attacking the victim with the intention of killing him, he conspires to commit first degree murder; if the defendant performs the same action but does not care whether the victim dies or not, he conspires to commit third-degree murder. In the latter example, the defendant did not . . . intend to aid an unintentional murder; rather, he intended to aid a malicious act resulting in a killing. Malice is not the absence of any intent, just the specific intent to kill. Where, as here, the defendant intends the underlying act . . . . which results in death, the evidence supports the charge of conspiracy to commit third-degree murder.

**Fisher**, **supra** at 1195.

Finally, Andrews contends that his sentence was unduly harsh and excessive, which presents a challenge to the discretionary aspects of sentencing. An appellant is not entitled to review of the discretionary aspects of sentencing unless he or she satisfies a four-part test:

> (1) whether appellant has filed a timely notice of appeal, **see** Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, **see** Pa.R.Crim.P. [720]; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code.

**Commonwealth v. Caldwell**, 117 A.3d 763, 768 (Pa. Super. 2015) (en banc) (quoting **Commonwealth v. Allen**, 24 A.3d 1058, 1064 (Pa. Super. 2011)).

Instantly, Andrews filed a timely notice of appeal and preserved his issues in a post-sentence motion. However, Andrews' brief does not include a statement of the reasons relied upon regarding the discretionary aspects of his sentence pursuant to Pa.R.A.P. 2119(f). The Commonwealth has objected to Andrews' failure to include a Rule 2119(f) statement in his brief. **See** Brief for Appellee, at 29. Accordingly, Andrews is not entitled to review of the discretionary aspects of sentencing. **See Caldwell**, **supra**.

Judgment of sentence affirmed.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary

Date: 4/15/2016