J. S25044/17

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
  :   PENNSYLVANIA
v.   :
  :
JARED WILEY,   :   No. 3667 EDA 2015
  :
Appellant   :


Appeal from the Judgment of Sentence, November 4, 2015,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0003396-2015


BEFORE:  BENDER, P.J.E., RANSOM, J., AND FORD ELLIOTT, P.J.E.


MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED AUGUST 15, 2017**

Jared Wiley appeals the judgment of sentence in which the Court of
Common Pleas of Philadelphia County sentenced him to no further penalty
for convictions of firearms not to be carried without a license and carrying
firearms in public in Philadelphia.[1]  After careful review, we reverse.

The record reflects that on January 30, 2015 at approximately
2:00 a.m., Officer Thomas Bergey ("Officer Bergey") and his partner of the
City of Philadelphia Police Department were on patrol in the 2100 block of
North 29th Street in the City of Philadelphia.  Officer Bergey pulled over a
gold 1998 Mercedes-Benz for a motor vehicle violation because it had only
one operational brake light.  Appellant was the driver of the vehicle.  There

---

[1] 18 Pa.C.S.A. §§ 6106 and 6108, respectively.

was a passenger, Andrew Robinson ("Robinson"), in the front passenger seat of the vehicle. (*Id.* at 37-38.) Officer Bergey requested that he produce his license and registration. Appellant did not produce a driver's license. Appellant did produce a wallet. Officer Bergey took the wallet and asked appellant for his birthdate. The birthdate did not match the date of birth that was on the permit to carry firearms that was in the wallet. The name on the permit to carry was Marasailles Burton ("Burton"). The vehicle was registered to Burton. Officer Bergey returned to the driver's side of the vehicle and asked for proper information. Appellant then identified himself by name. After Officer Bergey saw the identification of Burton as a corrections officer, he asked if there was a firearm in the car. (Notes of testimony, 11/3/15 at 30-34.) Appellant replied affirmatively and said that the firearm "was on the driver's side in between the door frame and the driver's seat itself -- down towards the floor." (*Id.* at 34.) Officer Bergey opened the door, saw the firearm, and removed it. (*Id.* at 35.) Appellant told Officer Bergey that he had a permit to carry that was issued in Florida. When the police checked for a permit issued to appellant in Florida, the search revealed no such permit. (*Id.* at 36.) Approximately ten to fifteen minutes after the vehicle was stopped, Burton appeared at the scene. When Officer Bergey questioned him, Burton replied that appellant did not have his permission to take the firearm or the vehicle. (*Id.* at 37.)

Appellant was arrested and charged with two counts of theft by unlawful taking--moveable property, receiving stolen property, unauthorized use of a motor vehicle, and providing false identification to a law enforcement officer in addition to the two crimes for which he was convicted.[2]

On November 3, 2015, the trial court conducted a bench trial. Burton testified that he had known appellant for nine years and considered him a friend. (*Id.* at 8.) Burton testified that on January 30, 2015, he and appellant had been "driving around, going to different friends' house [sic]. Then when we went to start to close the night out, we went to pick up [Robinson]." (*Id.* at 10.) Burton testified that he had never allowed appellant to drive one of his cars when Burton was not in the car. (*Id.* at 11.) On the night of January 30, 2015, Burton drove appellant and Robinson to appellant's residence. Burton testified that he was carrying a firearm. After talking for a while at appellant's residence, the three fell asleep. Before falling asleep, Burton removed his firearm from his "rig" or utility belt and put the firearm by his head along with his car keys. (*Id.* at 14.) Burton testified that he did not give appellant permission to take either his firearm or his car. (*Id.* at 14-15.) After appellant was pulled over, he telephoned

---

[2] 18 Pa.C.S.A. §§ 3921(a), 3925(a), 3928(a), and 4914(a), respectively.

Burton who ran to the site of the vehicle. (*Id.* at 16.) Burton identified his firearm for the police. (*Id.* at 18.)[3]

Appellant called Robinson as a witness. He testified that appellant is his brother. (*Id.* at 48.) Robinson testified that appellant and Burton "were tight. Every time you see [appellant], you see [Burton]. You see them together if they're not working." (*Id.* at 50.) Robinson testified that he had seen appellant drive Burton's cars by himself in the past. (*Id.* at 51.) On the night of January 30, 2015, Robinson did not see Burton's gun. He did not know that the gun was in the car, and he did not see it on Burton's person. (*Id.* at 58.)

Appellant testified that he knew that there was a gun in Burton's car because Burton usually kept a gun there. (*Id.* at 74.) Appellant believed that appellant had a valid Florida license to carry a firearm. (*Id.* at 77.) Appellant did not touch the gun on January 30, 2015. (*Id.* at 86.)

The trial court stated, "I barely believe anything [Burton] said." (*Id.* at 90.) The trial court found appellant guilty on the firearms charges and not guilty on the other charges. The trial court sentenced appellant to no further penalty.

Appellant appealed to this court and filed a statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). The trial court issued an opinion in response.

---

[3] Officer Bergey testified regarding the traffic stop and arrest.

Appellant raises the following issue for this court's review: "Was not the evidence insufficient as a matter of law to sustain appellant's convictions for violating the Uniform Firearms Act when there was no evidence that appellant had actual or constructive possession of the firearm, and appellant reasonably believed that he had a valid permit to carry a firearm?" (Appellant's brief at 4.)

With respect to the sufficiency of the evidence, we observe:

> In reviewing the sufficiency of the evidence, we view all the evidence admitted at trial in the light most favorable to the Commonwealth, as verdict winner, to determine whether there is sufficient evidence to enable the factfinder to find every element of the crime established beyond a reasonable doubt. **Commonwealth v. Thomas**, 867 A.2d 594 (Pa.Super. 2005). "This standard is equally applicable to cases where the evidence is circumstantial rather than direct so long as the combination of the evidence links the accused to the crime beyond a reasonable doubt." **Id.** at 597. And while a conviction must be based on more than mere suspicion or conjecture, the Commonwealth need not establish guilt to a mathematical certainty. **Id.** quoting **Commonwealth v. Coon**, 695 A.2d 794, 797 (Pa.Super. 1997). This Court is not free to substitute its judgment for that of the fact-finder; if the record contains support for the convictions they may not be disturbed. **Id.** citing **Commonwealth v. Marks**, 704 A.2d 1095, 1098 (Pa.Super. 1997) and **Commonwealth v. Mudrick**, 510 Pa. 305, 308, 507 A.2d 1212, 1213 (1986). Lastly, the factfinder is free to believe some, all, or none of the evidence. **Id.**

**Commonwealth v. Hartle**, 894 A.2d 800, 803-804 (Pa.Super. 2006).

With respect to constructive possession, this court has held:

> When contraband is not found on the defendant's person, the Commonwealth must establish "constructive possession," that is, the power to control the contraband and the intent to exercise that control. **Commonwealth v. Valette**, 531 Pa. 384, 613 A.2d 548 (1992). The fact that another person may also have control and access does not eliminate the defendant's constructive possession . . . . As with any other element of a crime, constructive possession may be proven by circumstantial evidence. **Commonwealth v. Macolino**, 503 Pa. 201, 469 A.2d 132 (1983). The requisite knowledge and intent may be inferred from the totality of the circumstances. **Commonwealth v. Thompson**, 286 Pa.Super. 31, 428 A.2d 223 (1981).

**Commonwealth v. Haskins**, 677 A.2d 328, 330 (Pa.Super. 1996), **appeal denied**, 692 A.2d 563 (Pa. 1997).

Section 6106 of the Crimes Code provides:

> **§ 6106.  Firearms not to be carried without a license**
>
> **(a)  Offense defined.--**
>
> > (1)  Except as provided in paragraph (2), any person who carries a firearm in any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license under this chapter commits a felony of the third degree.
> >
> > (2)  A person who is otherwise eligible to possess a valid license under this chapter but carries a firearm in

- 6 -

> any vehicle or any person who carries a firearm concealed on or about his person, except in his place of abode or fixed place of business, without a valid and lawfully issued license and has not committed any other criminal violation commits a misdemeanor of the first degree.

18 Pa.C.S.A. § 6106.

Section 6108 of the Crimes Code provides

> **§ 6108.  Carrying firearms on public streets or public property in Philadelphia**
>
> No person shall carry a firearm, rifle or shotgun at any time upon the public streets or upon any public property in a city of the first class unless:
>
> (1)    such person is licensed to carry a firearm; or
>
> (2)    such person is exempt from licensing under section 6106(b) of this title (relating to firearms not to be carried without a license).

18 Pa.C.S.A. § 6108.

Therefore, in order to establish that appellant violated these firearm statutes, the Commonwealth had to present evidence sufficient to show that appellant carried a concealed weapon on his person or in the car without possessing a valid license to do so.  Appellant concedes that he was aware that the firearm was in the vehicle when he took Burton's car to get something to drink.  However, he argues that he had no intent to exercise

any control over the firearm, and the Commonwealth failed to present any evidence that he did.

The trial court reasoned:

> Here, we accepted [appellant's] testimony that he had permission to use the car, that he knew Burton kept the gun in the car and that he knew the gun was in the car when he drove the vehicle. Those facts established the circumstances of [appellant's] constructive possession of the gun. While we understood that [appellant's] direct intent was to possess the car, the fact that he knew the gun was in the car established his constructive possession of the gun and thus violation of 18 Pa.C.S. §§ 6106 and [] 6108.
>
> The facts of this case are somewhat unique, in that [appellant] borrowed a friend's car, in which that friend kept his lawfully owned and carried gun, and that the gun was unloaded, and separated from the magazine within the passenger compartment. We also accepted that the presence of the gun was incidental to [appellant's] goal -- use of his friend's car with permission. Although we took all of those factors into account in imposing the sentence of no further penalty, we could not ignore the fact that [appellant] knowingly took constructive possession of the gun, in violation of the law.

Trial court opinion, 5/18/16 at 5.

Appellant argues that the evidence, whether direct or circumstantial, failed to establish that he had "conscious dominion" over the firearm as there was no evidence to establish an intent to exercise control over the firearm. *See Commonwealth v. Brown*, 48 A.3d 426, 430 (Pa.Super. 2012).

- 8 -

In ***Commonwealth v. Boatwright***, 453 A.2d 1058 (Pa.Super. 1982), this court addressed constructive possession in the context of firearms in a vehicle. In ***Boatwright***, police officers responded to a radio call that three "suspicious" men were in an automobile parked in front of a residence in the Hazelwood section of the City of Pittsburgh. When Officer Charles Roller ("Officer Roller") arrived at the location of the car, he observed Albert Boatwright ("Boatwright") sitting in the front passenger seat of the car. Officer Roller observed Boatwright "moving towards his left rear." Officer Roller just observed the movement of Boatwright's body. When Officer Roller opened the car door, he shined a light into the vehicle and saw a gun on the left rear floor. In addition to Boatwright, the vehicle was occupied by the driver and another passenger. The firearm was registered to an individual who was not in the vehicle. Boatwright was convicted in the Court of Common Pleas of Allegheny County of carrying a firearm without a license. ***Id.*** at 1058-1059.

Boatwright appealed to this court which reversed:

> Because the firearm was not found on appellant's person, he could properly be convicted only if the Commonwealth proved joint constructive possession with the other occupants of the vehicle. To do this, the Commonwealth must present evidence to show that appellant had both the power to control the firearm and the intent to exercise that control. Mere presence at the scene where the gun was found is not sufficient. The only evidence other than mere presence was Officer Roller's testimony that [Boatwright] made a movement toward the left rear of the vehicle. This evidence cannot provide

> proof beyond a reasonable doubt that [Boatwright] possessed the firearm in question. Therefore, the conviction cannot be sustained.

*Id.* at 1059 (citations omitted).

In evaluating whether the evidence presented was sufficient to establish possession of the firearm, the evidence must be evaluated in the light most favorable to the Commonwealth. Here, there is no question that appellant was driving the vehicle that contained a firearm that belonged to Burton. It is also undisputed that appellant was aware that the firearm was in the vehicle. However, a review of the evidence presented by the Commonwealth reveals no evidence that indicates that appellant intended to exercise control over the firearm. He and Robinson were traveling in the vehicle to get something to drink. As this court held in *Boatwright*, mere presence is not enough to establish constructive possession.

The Commonwealth argues that Burton's testimony that appellant took the firearm when they fell asleep at the apartment is sufficient evidence to establish that appellant had an intent to exercise control over the firearm. The Commonwealth further argues that it is irrelevant that the trial court, while conducting a bench trial, explicitly did not credit Burton's testimony.

The trier of fact, in this case the trial court, is free to believe, all, part, or none of the evidence presented when making credibility determinations. *Commonwealth v. Beasley*, 138 A.3d 39, 45 (Pa.Super. 2016). In deciding a sufficiency of the evidence claim, this court may not reweigh the

evidence and substitute our judgment for that of the fact-finder. ***Commonwealth v. Williams***, 153 A.3d 372, 375 (Pa.Super. 2016). Here, the Commonwealth is asking this court to ignore the credibility determination made by the trial court at time of trial, not in post-trial motions, and reweigh the evidence in the form of Burton's testimony. This court may not do so.[4]

Judgment of sentence reversed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: <u>8/15/2017</u>

---

[4] Because we have resolved that appellant did not possess the firearm, we need not address whether appellant possessed or thought he possessed a Florida license to carry a concealed weapon.