J-S04009-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| KAREEM ROGERS, | |
| Appellant | No. 3139 EDA 2015 |

Appeal from the Judgment of Sentence April 17, 2015
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s): CP-51-CR-0012380-2013

BEFORE:  SHOGAN and OTT, JJ., and STEVENS, P.J.E.[*]

MEMORANDUM BY SHOGAN, J.:                 **FILED FEBRUARY 03, 2017**

Appellant, Kareem Rogers, appeals from the judgment of sentence entered on April 17, 2015, in the Philadelphia County Court of Common Pleas.  We affirm.

In its opinion filed pursuant to Pa.R.A.P. 1925(a), the trial court provided the following factual background:

> Around 1:30 P.M. on March 26, 2013, Stacey Berry ("Berry") also known as "Trapp"[1] was shot and killed by Appellant following an argument on West Duncannon Street in the City and County of Philadelphia. Berry sold marijuana in the area, and Appellant's sale of drugs in the same area had caused

---

[*] Former Justice specially assigned to the Superior Court.

[1] Throughout Appellant's brief and the certified record, the decedent, Mr. Stacey Berry, is referred to by the nicknames "Trip," "Tripp," and "Trapp." Appellant's Brief at 8-14; N.T., 4/9/15, at 7, 87.

ongoing tension in the two (2) months preceding the incident. Kaeri Alvarez ("Alvarez") was eating lunch on Syndenham Avenue facing West Duncannon Street when he saw Berry, who was unfamiliar to him, on the corner with a group. Appellant and Eric Fuller ("Fuller") also known as "Geezer" who were also unfamiliar to Alvarez walked up the 5100 block of Syndenham Avenue toward Berry and an argument ensued. During the argument, Berry took off his jacket and it dropped to the ground. Berry and Appellant parted ways, and approximately five to ten (5-10) minutes later Berry returned to retrieve his jacket. Paul Lee ("Lee"), Berry's childhood friend, saw Appellant walk towards Berry with a gun in his hand. Appellant was accompanied by Fuller. Both Appellant and Fuller were known to Lee. Lee heard someone yell, "There he go, right there, Trapp" and saw Appellant open fire on Berry. Berry tried to run away while Appellant was shooting at him, but was struck by a bullet and eventually collapsed in the middle of West Duncannon Street. Alvarez called the police as he went to the spot where Berry fell. Alvarez was unable to make an identification of the shooter, however[, he] was able to identify Berry from a photo shown to him by police.

Akinlaibi Frazier ("Frazier") also known as "Akee" saw Appellant walking away after Berry was shot. Keith Pryer ("Pryer") who lived on northeast corner of 16th and Duncannon Streets, was on his lunch break when he saw Berry arguing with Appellant. Soon after Pryer returned to his task, he was notified that Berry had been shot and drove to Berry's location. Pryer attempted to move Berry and take him to a hospital, however officers that arrived on the scene instructed Pryer not to touch Berry. A medic unit transported Berry to Albert Einstein Medical Center.

Assistant Medical Examiner Dr. Albert Chu reviewed the autopsy of Berry which was performed by Dr. Marlon Osborne. The cause of death was determined to be one (1) penetrating gunshot wound to the chest. The bullet entered the central chest whereupon it entered the heart and the right lung. The manner of death was found to be homicide. Bullet holes were found in a window and wall of Pryer's home and a bullet was recovered from that same location. A bullet was also recovered from a car that was parked on the 1500 block of West Duncannon Street at the time of the shooting. Based on the path of the bullet, it appeared that the bullet was fired from [the] direction of

Syndenham Avenue. Ballistics analysis determined that the bullets recovered from the house, car, and from the body of Berry were all fired from the same gun. The Appellant did not have a valid license to carry a firearm.

After the shooting, Appellant went to the home of Kareem Williams ("Williams"). In a statement to police, Williams recounted that Appellant was rolling around on the floor and was acting nervous. Appellant said, "You gotta get me out of here. You gotta get to my peep's house" and eventually left the house through Williams' back door. On May 13, 2013, Fuller made a statement to Detective John Verrecchio ("Detective Verrecchio"), the assigned detective on the case, wherein Fuller said that Appellant shot first with a revolver, and Berry had a gun and shot back.

At trial, counsel posed a series of questions to Detective Verrecchio on cross-examination concerning documentation practices of the Philadelphia Police Department. Counsel asked if there would ever be an instance where a Transport to Homicide form (a 75-48 or a "Transportation 48") would be filed but no other documents prepared. Detective Verrecchio confirmed that the scenario was possible and gave the names of two (2) individuals who were transported to the Homicide Unit for questioning, but did not yield any documentation other than the Transportation 48 as they could not provide factual information pertinent to the case. Counsel inquired further about one (1) of the individuals, Gabrielle Wiggins ("Wiggins"), and Detective Verrecchio confirmed that he had a file for Wiggins marked "cleared by investigation" which he provided to the Commonwealth when Appellant was arrested. Counsel did not have a copy of this information. Counsel later determined through a conversation with Detective Verrecchio that Wiggins indicated that he was not present at the time of the incident, and had no information about the incident. Appellant maintained that he did not shoot Berry throughout trial.

Trial Court Opinion, 2/29/16, at 3-5. The trial court set forth the procedural history of this matter as follows:

On April 17, 2015, [Appellant] was found guilty, by a jury sitting before this Court, of one (1) count of First Degree Murder, a felony of the first degree; one (1) count of Conspiracy to

- 3 -

Commit Murder, a felony of the first degree; one (1) count of violation of the Uniform Firearms Act (VUFA) § 6108, a felony of the third degree; and one (1) count of Possession of an Instrument of Crime, a misdemeanor of the first degree.

On that same day, the Appellant was sentenced to mandatory life in prison without parole on the First Degree Murder and no further penalty was imposed on the remaining charges. Post sentence motions were filed on April 26, [20]15, and subsequently denied by operation of law on August 27, 2015.

A timely Notice of Appeal was filed on September 28, 2015. When the notes of testimony became available, on October 7, 2015 this Court ordered the Appellant, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), to file a concise, self-contained and intelligible statement of errors complained of on appeal. A 1925(b) statement of errors complained of on appeal was received from counsel on October 22, 2015. …

Trial Court Opinion, 2/29/16, at 1-2 (footnotes omitted).

In his appellate brief, Appellant presents six issues for this Court's consideration:

A. Was not the Evidence was [sic] Insufficient to Establish Appellant's Guilt as a Matter of law to the charge of First Degree Murder, as the evidence failed to establish the requisite level of malice to sustain such a conviction to First Degree Murder.

B. Was not The Verdict of Guilty to First Degree Murder was [sic] against the great weight of the evidence since the evidence failed to demonstrate the level of malice necessary to sustain a conviction for First Degree Murder.

C. Was not the Evidence was [sic] insufficient to Establish Appellant's guilt as a Matter of law to the charge of First Degree Murder, where the evidence demonstrated the presence of a conflict respecting the identity of the actual person who shot and killed the decedent.

D. Was not the Verdict of Guilty to First Degree Murder was [sic] against the great weight of the evidence since the evidence presented demonstrated a conflict as to the identity of the person who actually shot and killed the decedent.

E. Did the Trial Court erred [sic] as a Matter of Law in refusing to give an instruction of Self-Defense to the jury, where the evidence adduced by the Commonwealth demonstrated that self-defense was plausible.

F. Did not the Trial Court erred [sic] as a Matter of Law in denying Appellant's objections to the Prosecutor's challenges to all black males and five black females from the pool of prospective jurors, particularly since the Prosecutor failed to demonstrate a [sic] legitimate non-raced based reasons for excluding these prospective jurors and violated the spirit of the Voir Dire process in declaring his stated reason for the challenges were related strictly to the Commonwealth's trial strategy .

Appellants' Brief at 6.[2]

We have reviewed the briefs of the parties, the relevant law, the certified record before us, and the thorough opinion of the trial court dated February 29, 2016. After review, we discern no merit to the issues Appellant raises on appeal. It is our conclusion that the trial court correctly stated the

---

[2] While Appellant separated his claims of error into six issues in his brief, in his Pa.R.A.P. 1925(b) statement, Appellant combined multiple issues into a single claim of error. Appellant's Pa.R.A.P. 1925(b) Statement of Errors Complained of on Appeal, 10/22/15, at ¶7. The trial court opted not to find waiver and instead endeavored to distill Appellant's single, all-encompassing, claim of error into discrete arguments. Trial Court Opinion, 2/29/16, at 5. However, the trial court opted to address Appellant's briefed issues A-D as one claim. *Id*. at 9-14.

applicable standards of review, thoroughly addressed the issues presented, and aptly disposed of Appellant's claims of error.[3]

Accordingly, we affirm the judgment of sentence based on the trial court's opinion, and we adopt its analysis and reasoning as our own.[4] The parties are directed to attach a copy of the trial court's February 29, 2016 opinion in the event of further proceedings in this matter.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/3/2017

---

[3] We note that the second issue the trial court addressed (Trial Court Opinion, 2/29/16, at 7-8), which concerned confronting witnesses, was abandoned by Appellant on appeal.

[4] We add only that "[s]pecific intent and **malice** may be established through circumstantial evidence, such as the use of a deadly weapon on a vital part of the victim's body." ***Commonwealth v. Arrington***, 86 A.3d 831, 840 (Pa. 2014) (emphasis added). As noted by the trial court, Appellant fired multiple bullets at Berry, and one bullet entered Berry's chest penetrating the heart and the right lung. Trial Court Opinion, 2/29/16, at 4.

IN THE COURT OF COMMON PLEAS OF PHILADELPHIA
FIRST JUDICIAL DISTRICT OF PENNSYLVANIA
CRIMINAL TRIAL DIVISION

| COMMONWEALTH OF PENNSYLVANIA | : | CP-51-CR-0012380-2013 |
| v. | : | |
| KAREEM ROGERS, APPELLANT | : | SUPERIOR CT: 3139 EDA 2015 |

**FILED**

FEB 29 2016

Criminal Appeals Unit
First Judicial District of PA

CP-51-CR-0012380-2013 Comm. v. Rogers, Kareem
Opinion

7412900151

## OPINION

RANSOM, J.                                                        February 29, 2016

On April 17, 2015, the Appellant, Kareem Rogers, also known as "Realistic" or "Chester" was found guilty, by a jury sitting before this Court, of one (1) count of First Degree Murder[1], a felony of the first degree; one (1) count of Conspiracy to Commit Murder[2], a felony of the first degree; one (1) count of violation of the Uniform Firearms Act (VUFA) § 6108[3], a felony of the third degree; and one (1) count of Possession of an Instrument of Crime[4], a misdemeanor of the first degree.

On that same day, the Appellant was sentenced to mandatory life in prison without parole on the First Degree Murder and no further penalty was imposed on the remaining charges. Post sentence motions were filed on April 26, 15, and subsequently denied by operation of law[5] on August 27, 2015.

A timely Notice of Appeal was filed on September 28, 2015. When the notes of testimony became available, on October 7, 2015 this Court ordered the Appellant, pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), to file a concise, self-contained and intelligible statement of errors

---

[1] 18 Pa.C.S. § 2502(c).
[2] 18 Pa.C.S. § 903(2).
[3] 18 Pa.C.S. § 6108.
[4] 18 Pa.C.S. § 907.
[5] Pa. R.Crim. P. Rule 720.

1

complained of on appeal. A 1925(b) statement of errors complained of on appeal was received from counsel on October 22, 2015. In his 1925(b) statement, Appellant raises the following issue, copied verbatim:

(1) This Court erred as a matter of law in denying appellant's challenge to the commonwealth in exercising peremptory strikes on Eight (8) African American Jurors for reasons that were not sufficiently race neutral and this court's finding in favor of the commonwealth and against Appellant;

This Court violated Appellant's right under the 6th amendment to confront a potential witness against him at trial, where this court failed to order the Commonwealth and/or its agents to turn over all information relevant to a witness interviewed by the police but no statement had been taken, nor was provided to the defense involving this witness;

This Court erred refusing to and overruling Appellant's request for a jury instruction on self-defense, even though the evidence adduced by the Commonwealth tended to that show self-defense as plausible on the part of the Appellant or the unnamed person who the Commonwealth's own witnesses alleged were present with defendant on the day of the shooting;

This Court erred in allowing operation of law to deny Appellant's Motion for Post Verdict Relief where the evidence was insufficient to establish the requisite malice necessary to sustain a conviction for 1st Degree Homicide and a verdict of guilty on 1st Degree Homicide was against the great weight of the evidence.

This court erred in allowing by operation of law to deny Appellant's Motion for Post Verdict Relief, where the evidence was insufficient to establish Appellant's identity as the actual shooter

2

## FACTS

Around 1:30 P.M. on March 26, 2013, Stacey Berry ("Berry") also known as "Trapp" was shot and killed by Appellant following an argument on West Duncannon Street in the City and County of Philadelphia. Berry sold marijuana in the area, and Appellant's sale of drugs in the same area had caused ongoing tension in the two (2) months preceding the incident. Kaeri Alvarez ("Alvarez") was eating lunch on Syndenham Avenue facing West Duncannon Street when he saw Berry, who was unfamiliar to him, on the corner with a group. Appellant and Eric Fuller ("Fuller") also known as "Geezer" who were also unfamiliar to Alvarez walked up the 5100 block of Syndenham Avenue toward Berry and an argument ensued. During the argument, Berry took off his jacket and it dropped to the ground. Berry and Appellant parted ways, and approximately five to ten (5-10) minutes later Berry returned to retrieve his jacket. Paul Lee ("Lee"), Berry's childhood friend, saw Appellant walk towards Berry with a gun in his hand. Appellant was accompanied by Fuller. Both Appellant and Fuller were known to Lee. Lee heard someone yell, "There he go, right there, Trapp" and saw Appellant open fire on Berry. Berry tried to run away while Appellant was shooting at him, but was struck by a bullet and eventually collapsed in the middle of West Duncannon Street. Alvarez called the police as he went to the spot where Berry fell. Alvarez was unable to make an identification of the shooter, however was able to identify Berry from a photo shown to him by police.

Akinlaibi Frazier ("Frazier") also known as "Akee" saw Appellant walking away after Berry was shot. Keith Pryer ("Pryer") who lived on northeast corner of 16th and Duncannon Streets, was on his lunch break when he saw Berry arguing with Appellant. Soon after Pryer returned to his task, he was notified that Berry had been shot and drove to Berry's location. Pryer attempted to move Berry

3

and take him to a hospital, however officers that arrived on the scene instructed Pryer not to touch Berry. A medic unit transported Berry to Albert Einstein Medical Center.

Assistant Medical Examiner Dr. Albert Chu reviewed the autopsy of Berry which was performed by Dr. Marlon Osborne. The cause of death was determined to be one (1) penetrating gunshot wound to the chest. The bullet entered the central chest whereupon it entered the heart and the right lung. The manner of death was found to be homicide. Bullet holes were found in a window and wall of Pryer's home and a bullet was recovered from that same location. A bullet was also recovered from a car that was parked on the 1500 block of West Duncannon Street at the time of the shooting. Based on the path of the bullet, it appeared that the bullet was fired from direction of Syndenham Avenue. Ballistics analysis determined that the bullets recovered from the house, car, and from the body of Berry were all fired from the same gun. The Appellant did not have a valid license to carry a firearm.

After the shooting, Appellant went to the home of Kareem Williams ("Williams"). In a statement to police, Williams recounted that Appellant was rolling around on the floor and was acting nervous. Appellant said, "You gotta get me out of here. You gotta get to my peep's house" and eventually left the house through Williams' back door. On May 13, 2013, Fuller made a statement to Detective John Verrecchio ("Detective Verrecchio"), the assigned detective on the case, wherein Fuller said that Appellant shot first with a revolver, and Berry had a gun and shot back.

At trial, counsel posed a series of questions to Detective Verrecchio on cross-examination concerning documentation practices of the Philadelphia Police Department. Counsel asked if there would ever be an instance where a Transport to Homicide form (a 75-48 or a "Transportation 48") would be filed but no other documents prepared. Detective Verrecchio confirmed that the scenario was possible and gave the names of two (2) individuals who were transported to the Homicide Unit

4

for questioning, but did not yield any documentation other than the Transportation 48 as they could not provide factual information pertinent to the case. Counsel inquired further about one (1) of the individuals, Gabrielle Wiggins ("Wiggins"), and Detective Verrecchio confirmed that he had a file for Wiggins marked "cleared by investigation" which he provided to the Commonwealth when Appellant was arrested. Counsel did not have a copy of this information. Counsel later determined through a conversation with Detective Verrecchio that Wiggins indicated that he was not present at the time of the incident, and had no information about the incident. Appellant maintained that he did not shoot Berry throughout trial.

## LEGAL DISCUSSION

The Appellant raises one (1), five-pronged (5) issue on appeal. As an initial matter, this Court notes that the issue is not concise, however the prongs are identifiable enough to be severed and addressed individually. The first issue Appellant raises is:

**This Court erred as a matter of law in denying appellant's challenge to the commonwealth in exercising peremptory strikes on Eight (8) African American Jurors for reasons that were not sufficiently race neutral and this court's finding in favor of the commonwealth and against Appellant;**

The Equal Protection Clause prohibits a prosecutor from using the State's peremptory challenges to exclude otherwise qualified and unbiased persons from the petit jury solely by reason of their race. Powers v. Ohio, 499 U.S. 400, 111 S. Ct. 1364, 1365, 113 L. Ed. 2d 411 (1991) See, e.g., Batson v. Kentucky, 476 U.S. 79, 93, 106 S. Ct. 1712, 1721, 90 L. Ed. 2d 69 (1986); Holland v. Illinois, 493 U.S. 474, 479, 110 S.Ct. 803, 806-807, 107 L.Ed.2d 905. The burden is on the defendant who alleges discriminatory selection of the venire "to prove the existence of purposeful discrimination" which may be demonstrated by reference to the totality of relevant circumstances.

5

<u>Batson</u>, supra citing <u>Whitus v. Georgia</u>, 385 U.S., at 550, 87 S.Ct., at 646-47. To show a <u>Batson</u> violation, an Appellant must demonstrate his particular factual situation satisfies the test laid out by the United States Supreme Court's opinion in that case:

> First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for his peremptory challenges. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

<u>Commonwealth v. Simpson</u>, 620 Pa. 60, 74-75, 66 A.3d 253, 261 (2013) citing <u>Batson</u>, supra. A "pattern" of strikes against jurors of a specific race included in the particular venire might give rise to an inference of discrimination. <u>Batson</u>, supra. The government's race-neutral explanation "need not rise to the level justifying exercise of a challenge for cause," but it must provide legitimate reasons that are "clear and reasonably specific" and "related to the particular case to be tried." <u>Batson</u>, 476 U.S. at 97-98 & n. 20, 106 S.Ct. 1712, 90 L.Ed.2d 69 (internal quotations omitted).

Appellant[6] asserts the Commonwealth violated his rights under <u>Batson</u> by utilizing its peremptory challenges in a manner which discriminated against eight (8) African–Americans, however this claim lacks merit as the Appellant could not meet his burden to establish actual, purposeful discrimination.[7] Appellant raised two (2) <u>Batson</u> challenges, one (1) of which was denied and the other granted. (N.T. 4/7/15 at 129-149, 179-184). The first challenge, which was denied, involved Juror 41, an African-American female. <u>Id</u>. at 139. Up to that point in selection, three (3) black females had been struck as well as one (1) black male, and three (3) African-Americans were selected for the jury panel. <u>Id</u>. at 149. Counsel alleged that the Commonwealth exercised a preemptory

---

[6] Appellant is an African-American male.

[7] The Appellant waived the presence of the Trial Judge during jury selection as a previous trial was ongoing, and Court Administration directed the <u>voire dire</u> process. When each <u>Batson</u> challenge was made, the Trial Judge returned to hear the arguments of counsel and make a ruling.

6

strike against Juror 41 in accordance with a pattern of discrimination against black women, though counsel declined to take issue with any of the three (3) prior strikes against black women as they were made. Id. at 41, 92, 109. During voire dire, Juror 41 stated that "people do dumb things" on both sides of the justice system. Id. at 125. When questioned about this statement, Juror 41 relayed that she had an uncle who was convicted of robbing a bank, and she said she understood his circumstances. Id. at 132-133. Juror 41 had not indicated that she knew someone charged with a crime on her questionnaire. Id. The prosecutor for the Commonwealth explained that there would be testimonial evidence that Berry fired at the Appellant. Id. at 141. The prosecutor for the Commonwealth believed Juror 41's responses showed that she may be more judgmental of the victim who may have had a gun, and therefore more lenient on the Appellant than another juror. Id. at 128 et seq. Although the Commonwealth used preemptory challenges to strike three (3) black women prior to Juror 41, this fact alone did not give rise to the inference discrimination. Under such circumstances, where Juror 41's statements exposed a basis for the Commonwealth to want to remove her from the pool with a peremptory challenge, Appellant could not show actual, purposeful discrimination on the part of the Commonwealth. No relief is due.

The second claim Appellant raises is:

**This Court violated Appellant's right under the 6th amendment to confront a potential witness against him at trial, where this court failed to order the Commonwealth and/or its agents to turn over all information relevant to a witness interviewed by the police but no statement had been taken, nor was provided to the defense involving this witness;**

The Sixth Amendment's Confrontation Clause provides that, "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." See U.S. Const. amend. VI; Commonwealth v. Overby, 570 Pa. 328, 337, 809 A.2d 295, 300 (2002). See generally

7

Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 1068, 13 L.Ed.2d 923 (1965) (applying the Confrontation Clause to the States through the Fourteenth Amendment).

> "The text of the Confrontation Clause reflects this focus [on testimonial hearsay]. It applies to 'witnesses' against the accused—in other words, those who 'bear testimony.' 1 N. Webster, An American Dictionary of the English Language (1828). 'Testimony,' in turn, is typically 'a solemn declaration or affirmation made for the purpose of establishing or proving some fact.' Ibid. An accuser who makes a formal statement to government officers bears testimony in a sense that a person who makes a casual remark to an acquaintance does not."

Crawford v. Washington, 541 U.S. 36, 51, 124 S. Ct. 1354, 1364, 158 L. Ed. 2d 177 (2004).

This claim lacks merit, as Appellant's right under the Sixth Amendment was not infringed upon where the individual in question was not in fact a witness. The prosecution is not required to disclose to the defense "every fruitless lead followed by investigators of a crime." Commonwealth v. Lambert, 584 Pa. 461, 884 A.2d 848 (2005) at 475, (citing Commonwealth v. Crews, 536 Pa. 508, 640 A.2d 395, 406 (1994)). In the instant case, Gabrielle Wiggins who is the person listed on the disputed 75-48, made no solemn declaration for the purpose of establishing some fact, and therefore bore no testimony for or against Appellant. (N.T. 4/14/15 at 149-152; 4/15/15 at 43-44). Detective Verrecchio stated that no documentation other than the Transportation 48 was created by Philadelphia Police based on Wiggins' indication that he was not present at the time of the shooting and had no information regarding same. (N.T. 4/15/15 at 43-44). Wiggins was cleared by investigation. (N.T. 4/14/15 at 149-152). Additionally, Wiggins was known to Appellant as someone who lived in the neighborhood, and Appellant could have independently interviewed him to determine if he had any information favorable to Appellant. (N.T. 4/15/15 at 43-44). The absence of any testimony by Wiggins coupled with Appellant's prior knowledge of Wiggins, prevented an infringement of Appellant's Sixth Amendment rights.

The third claim Appellant raises is:

8

**This Court erred refusing to and overruling Appellant's request for a jury instruction on self-defense, even though the evidence adduced by the Commonwealth tended to that show self-defense as plausible on the part of the Appellant or the unnamed person who the Commonwealth's own witnesses alleged were present with defendant on the day of the shooting;**

A defendant in a first-degree murder trial arising from a shooting incident is not entitled to a charge on self-defense where he denied having done the shootings at all. Commonwealth v. Gay, 489 Pa. 17, 21-22, 413 A.2d 675, 677 (1980), (citing Commonwealth v. Young, 460 Pa. 598, 334 A.2d 252 (1975)).

At no point during trial did the Appellant take the position that he shot Berry, thus no self-defense instruction was warranted.

Appellant's fourth and fifth issues challenge the sufficiency of the evidence and will be addressed simultaneously. The fourth and fifth issues Appellant raises are:

**This Court erred in allowing operation of law to deny Appellant's Motion for Post Verdict Relief where the evidence was insufficient to establish the requisite malice necessary to sustain a conviction for 1st Degree Homicide and a verdict of guilty on 1st degree Homicide was against the great weight of the evidence.**

**This court erred in allowing by operation of law to deny Appellant's Motion for Post Verdict Relief, where the evidence was insufficient to establish Appellant's identity as the actual shooter**

The standard of review for a sufficiency of evidence claim is "whether the evidence admitted at trial and all reasonable inferences drawn therefrom, when viewed in the light most favorable to the Commonwealth as the verdict winner, is sufficient to support all the elements of the offenses beyond a reasonable doubt." Commonwealth v. Miller, 541 Pa. 531, 540, 664 A.2d 1310, 1314 (1995) (citing Commonwealth v. Carpenter, 511 Pa. 429, 435, 515 A.2d 531, 533-534 (1986)). When reviewing

9

sufficiency of the evidence, an appellate court may not substitute its judgment for that of the fact-finder; if the record contains support for the verdict, it may not be disturbed. See Commonwealth v. Marks, 1997 Pa. Super. LEXIS 3857, 4, 704 A. 2d 1095, 1098 (1997). What may appear unlikely to a reviewing court cannot supplant what the fact finder has found. Commonwealth v. Jackson, 506 Pa. 469, 474, 485 A.2d 1102, 1104 (Pa. 1984).

A criminal homicide constitutes Murder of the first degree when it is committed by an intentional killing.[8] An intentional killing is a killing by means of . . . any kind of willful, deliberate and premeditated killing.[9] To prove a charge of First Degree Murder, the Commonwealth must establish that Appellant had the specific intent to kill. In establishing the presence of a specific intent to kill the Commonwealth is not required to depend upon proof by direct evidence but also may meet its burden by circumstantial evidence alone. The specific intent to kill which is necessary to constitute First Degree Murder, may be found from a defendant's words or conduct or from the attendant circumstances together with all reasonable inferences therefrom. Commonwealth v. Tyrrell, 405 Pa. 210, 174 A.2d 852 (1961). Specific intent may be reasonably inferred from the use of a deadly weapon on a vital part of the victim's body. Id. A "deadly weapon" is defined as any device which, in the manner in which it is used, is likely to produce death or serious bodily injury.[10] Thus, when someone fires a handgun at another, it is assumed the intent was to inflict serious bodily injury or death. Commonwealth v. Robinson, 817 A.2d 1153, 1160 (Pa. Super 2003).

Rule of Criminal Procedure 720 sets forth the procedure to be followed when a post-sentence motion is filed and provides in relevant part:

---

[8] 18 Pa.C.S § 2502(a)
[9] 18 Pa.C.S § 2502(d)
[10] 18 Pa.C.S.A. § 2301

10

(2) Trial Court Action.
    (a) Briefing Schedule. Within 10 days after a post-sentence motion is filed, if the judge determines that briefs or memoranda of law are required for a resolution of the motion, the judge shall schedule a date certain for the submission of briefs or memoranda of law by the defendant and the Commonwealth.
    (b) Hearing; Argument. The judge shall also determine whether a hearing or argument on the motion is required, and if so, shall schedule a date or dates certain for one or both.
    (c) Transcript. If the grounds asserted in the post-sentence motion do not require a transcript, neither the briefs nor hearing nor argument on the post-sentence motion shall be delayed for transcript preparation.

(3) Time Limits for Decision on Motion. The judge shall not vacate sentence pending decision on the post-sentence motion, but shall decide the motion as provided in this paragraph.
    (a) Except as provided in paragraph (B)(3)(b), the judge shall decide the post-sentence motion, including any supplemental motion, within 120 days of the filing of the motion. If the judge fails to decide the motion within 120 days, or to grant an extension as provided in paragraph (B)(3)(b), the motion shall be deemed denied by operation of law.

Pa. R. Crim. P. 720(B)(2)(a)-(b).

Appellant's timely post-sentence motions did not merit the submission of briefs, memoranda of law, or a hearing, and were properly denied by operation of law upon the expiration of 120 days. The evidence was sufficient to confirm that Appellant had the malice necessary to sustain a conviction for First Degree Murder, his identity as the shooter was established, and the verdict of guilty was not against the weight of the evidence. For these reasons as outlined below, this Court did not err in allowing the Appellant's post-sentence motions to be denied by operation of law in accordance with the procedures delineated in Pennsylvania Rule of Criminal Procedure 720.

In the instant case, the Commonwealth presented sufficient evidence to sustain a conviction on First Degree Murder. The Commonwealth presented direct evidence through testimony of its witnesses and forensic analysis which established the Appellant as the perpetrator of this crime. At trial, two (2) eye-witnesses, Alvarez and Lee, saw the shooting. (N.T. 4/9/15 at 8-18, 39-41). Alvarez saw Appellant and Fuller, who were unknown to him, walk up the 5100 block of Syndenham Avenue toward West Duncannon Street where they got into an argument with Berry. Id. at 38-41.

11

Approximately five to ten (5-10) minutes after Appellant and Berry parted ways, Alvarez saw Appellant return, pull out a handgun and shoot at Berry multiple times as Berry tried to run away. Id. Alvarez was unable to make an identification of the Appellant, however he was able to identify Berry from a photo shown to him by police. Id. at 45-46.

Three (3) witnesses placed Appellant at the scene. Lee observed Appellant and Fuller walking up Syndenham Avenue towards Berry. Id. at 15-18. Both Appellant and Fuller were known to Lee. Id. at 9, 15. Appellant had a gun in his hand at the time lee saw him. Id. Lee then saw Appellant open fire on Berry who was trying to run away and ultimately collapsed in the middle of West Duncannon Street. Id. at 8, 13. Lee identified Appellant both in direct testimony and by photo. Id. at 8-9, 18. Frazier saw Appellant walking away after Berry was shot in the chest. Id. at 125-127. Pryer saw Appellant, who he later identified by photo, arguing with Berry directly before Berry died. Id. at 71-73. Forensic analysis determined that the three (3) bullets recovered from the scene were all fired from the same gun, and the bullets appeared to be fired from the direction of Syndenham Avenue onto West Duncannon Street. (N.T. 4/10/15 at 108-110, 162). Specific intent to kill can be reasonably inferred from the actions taken by the Appellant in leaving the scene of the argument, returning with a gun, shooting at Berry multiple times, and ultimately striking him in the chest. Indeed, the single bullet wound was the cause of Berry's death. Id. at 11. When viewed in the light most favorable to the Commonwealth, there was sufficient evidence to support Appellant's First Degree Murder conviction beyond a reasonable doubt.

The Appellant next contends that the verdict was against the weight of the evidence. This contention also lacks merit. The standard of appellate review for a claim that the verdict was against the weight of the evidence is limited to a determination of whether the trial court abused its discretion in denying the Appellant's post-verdict motion i.e. that the fact-finder's verdict "shocked the

12

conscious." Commonwealth v. Lloyd, 2005 Pa. Super. 236, P12, 878 A.2d 867, 872 (2005). The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. Commonwealth v. Small, 559 Pa. 423, 435, 741 A.2d 666, 672 (Pa. 1999). A new trial should not be granted because of a mere conflict in testimony or because the trial judge would have arrived at a different conclusion on the same facts. Commonwealth v. Brown, 538 Pa. 410, 648 A2d. 1177, 1191 (Pa. 1994).

The verdict in the instant case does not shock the conscience. Testimony at trial established that Appellant got into an argument with Berry and returned with a gun which he then used to shoot and kill Berry. Williams testified that after the incident, Appellant was rolling around on the floor of Williams' house acting nervous. (N.T. 4/9/15 at 211-212). Appellant was sweating profusely and said, "You gotta get me out of here. You gotta get me to my peep's house". Id. At the close of trial, the jury determined the credibility of the witnesses and found that Appellant acted with malice to commit First Degree Murder.

## CONCLUSION

For the reasons set forth above, the decision of this Court should be affirmed.

BY THE COURT:

Ransom, J.

13

Re:     **Commonwealth v. Kareem Rogers,**
        **CP-51-CR-0012380-2013**
        **3139 EDA 2015**

**TYPE: OPINION**

### PROOF OF SERVICE

I hereby certify that I am this day serving the foregoing Court Order upon the person(s), and in the manner indicated below, which service satisfies the requirements of Pa.R.Crim.P. 114:

Defendant:          Kareem Rogers
                    PP 1020271
                    SCI Forest
                    P.O. Box 945
                    286 Woodland Drive
                    Marienville, PA  16239

Type of Service:    ( ) Personal Service  ( ) First Class Mail    ( X ) Other: <u>Certified</u>

Defense Attorney:   Debra D. Rainey, Esquire
                    100 South Broad Street, Suite 610
                    Philadelphia, PA 19110

Type of Service:    ( ) Personal Service  ( X ) First Class Mail  ( ) Other: _____

District Attorney:  Hugh J. Burns Jr., Esquire
                    Philadelphia District Attorney's Office
                    Widener Building – Three South Penn Square
                    Philadelphia, PA 19107

Type of Service:    ( ) Personal Service  ( X ) First Class Mail  ( ) Other: _____

Date:   February 29, 2016 _____

_____
Tianna K. Kalogerakis, Esq.
Law Clerk to the Hon. Lillian H. Ransom